Danny Dean THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 68984.

Court of Criminal Appeals of Texas, En Banc.

Dec. 18, 1985.

Ronald N. Hayes, Charles Rice Young, Judy Lynn Przyborski, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Timothy G. Taft, and David Knight, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an appeal taken from a conviction of capital murder, specifically, murder committed in the course of kidnapping. V.T. C.A. Penal Code § 19.03. The death penalty was imposed after the jury answered affirmatively the special issues submitted under Art. 37.071, V.A.C.C.P. Appellant brings ten grounds of error before this Court. We affirm the conviction.

In ground of error number four, appellant contends that the trial court erred in denying his request for a jury charge instruction on the lesser included offense of murder, since the evidence raised a question as to whether a kidnapping was committed at all, or whether appellant had any intent to kidnap. Appellant also contends that the court erred by not charging the jury on criminally negligent homicide.

In order to address appellant's contentions, we must review the evidence. After his arrest, appellant gave a confession in which he described the following sequence of events. On July 17, 1981, he and Zendal Peels were driving home from a skating rink when they spotted a young woman whose car had broken down. They stopped to determine whether they could be of assistance. After finding that the fan belt was broken, appellant and Peels drove the woman to a parts store where she purchased a new belt. They returned to the stalled car and appellant put on the new fan belt. When the car was fixed, appellant and Peels followed the woman to her house. She invited them inside. They drank some beer and smoked some marijuana. Peels stated that he wanted to get another beer and left the room. When Peels returned, he walked over to the woman and "swung his hand out and hit her in the face with [appellant's] .25 automatic [gun]." Appellant saw a trickle of blood on the woman as she went limp. Appellant was "getting scared, because [he] thought that [Peels] had probably killed her." Peels dragged the woman out the back door of the house, and appellant helped him put her in the car, on the front seat. Peels and appellant got in the car, and appellant drove away from the house. After traveling for some time, the woman regained consciousness. Appellant reached to push her and she bit his hand. Appellant told Peels to grab her. Peels hit her in the head with the gun. Appellant stated:

"Then when we were over on Hardy [Street], she come to again, and he began hitting her in the head with his knife, time after time. She started trying to cry, but had something in her throat, and it was sort of gurgling. Finally she went out again. We were coming back around on Airline [Street], and she started mumbling and trying to cry again. Right after that we got on to the Freeway from Airline, and we went up and there was a dark spot on the road before the Greenspoint Mall. She had been saying 'God help me' over and over. I got my gun, and reached over, and glanced to see her head, and when I saw the gun against the side of her head, I shot her one time."

As they were driving, appellant and Peels found several bricks in the road, which they retrieved. Appellant tied the woman's wrists together, and Peels tied her feet. They tied the bricks to her body and threw her into the San Jacinto River.

In addition to the confession, the State introduced evidence corroborating appellant's description of the crime. Friends and relatives of the deceased were called, as well as the investigating officers. A large number of exhibits were introduced which also corroborated the confession.

The defense did not dispute the facts relating to the actual murder. Rather, the entire defense was based upon questioning the sufficiency of the State's evidence, and establishing that appellant was insane at

the time of the murder. Appellant did not take the stand.

■■■ We may now address appellant's claim that the court erred by failing to submit jury charge instructions on the lesser included offenses of murder and criminally negligent homicide. With regard to the latter offense, appellant made no request for a jury charge on the issue at trial. Thus, we will not consider his contention on appeal. See *Boles v. State,* 598 S.W.2d 274 (Tex.Cr.App.1980).

In *Aguilar v. State,* 682 S.W.2d 556 (Tex. Cr.App.1985), this Court adopted the two-prong test set forth in *Royster v. State,* 622 S.W.2d 442 (Tex.Cr.App.1981) (opinion on rehearing) for determining whether a jury must be charged on a lesser included offense. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Aguilar,* supra at 558; *Cordova v. State,* 698 S.W.2d 107 (Tex.Cr.App.1985); *Bell v. State,* 693 S.W.2d 434 (Tex.Cr.App.1985), and cases cited therein at 439; *Lugo v. State,* 667 S.W.2d 144 (Tex.Cr.App.1984). See also *Thomas v. State,* 699 S.W.2d 845, 846 (Tex. Cr.App.1985), and cases cited therein.

■ In order to establish the first prong of the test, we turn to the statutory definition of a lesser included offense as set forth in the Code of Criminal Procedure. Article 37.09, V.A.C.C.P. provides:

"An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Certainly murder is a lesser included offense of capital murder since it meets the requirements of Art. 37.09(1), above. Since proof of this offense would be included within the proof necessary to establish capital murder, the first prong of the *Aguilar* test is established.

The question remaining is whether there is evidence that appellant, if guilty, is guilty only of the lesser included offense of murder. In deciding this question, we consider all of the evidence raised at trial; if evidence from any source raises the issue and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Lugo,* supra. See also *Thomas,* supra, and *Bell,* supra at 442, and cases cited therein. Appellant contends that, since the statement in his confession that he thought his co-defendant had killed the deceased prior to taking her out to the car raises a question of appellant's intent to commit kidnapping because he could not have kidnapped a dead body, the evidence raises the possibility that he was guilty only of murder.

Initially, we note that appellant did not testify nor offer any testimony which might reasonably have raised an inference that if he was guilty, he was guilty only of murder. Also, the statements in the confession show that even if he at first believed the woman to be dead, he knew she was alive when she regained and fought for consciousness three times before he shot her. The evidence in the case at bar would not have permitted the jury to reasonably reject the statements that appellant knew the woman was alive before he shot her and while he was restraining her liberty, yet still permit it to find him guilty of murder. See generally *Thomas,* supra. Cf. *Bell* and *Lugo,* supra, and *Broussard v. State,* 642 S.W.2d 171 (Tex.Cr.App.1982). There was no evidence from any source indicating that if appellant was guilty, he

was guilty only of murder. See *Cordova*, supra. Thus, the trial court did not err in refusing to instruct the jury on the lesser included offense of murder. Appellant's fourth ground of error is overruled.

In ground of error number one, appellant contends that the trial court erred in not granting his timely request for two additional peremptory challenges. The record shows that potential juror Barbara Ann Taylor was called and examined by the State, the defense, and the court. She was selected as juror number 10. Following her selection, appellant was left with four peremptory strikes. A short time later, Taylor informed a member of the court's staff that her feelings had changed since her initial voir dire examination, and she could not abide by her oath as a juror.

After the voir dire examination of Marion Sandford, and after the State had declared Sandford acceptable, appellant's counsel approached the bench and requested two additional peremptory strikes, stating:

"[I]n light of the fact that [Taylor] may be brought before the Court and upon examination, may turn out not to be a qualified juror, the Defense would ask for two additional peremptory challenges based upon—well, a number of things. The number of jurors that were struck by the State and Defense since juror number 43, who would have been Barbara Ann Taylor, the Defense exercised two strikes, one Samuel Clements, juror number 44, and juror number 48, Howard White. If Barbara Ann Taylor had been struck for cause, the Defense probably would have exercised their strikes differently. Therefore, would show some harm, depending upon what happened to Barbara Ann Taylor."

Appellant's other attorney stated:

"... At this time, the Defense is in the position of not knowing whether or not Ms. Taylor will be a juror in this case now or not. We have been informed that it would be the State's position that if she were called back up and at that time were to state that she could not give the death penalty, that they would then be taken—her name would be removed from this prospective juror panel as a juror and that would put the Defense back in the position of having one less juror than we thought we had. We are further faced with the fact that we would like to exercise a peremptory challenge at this time on this juror. We have, as the next prospective juror coming up, a lady who is in the Houston Police Department and is married to a Houston Police captain. We would anticipate that she may be very favorable to the State. Without knowing the situation as to Ms. Taylor, we have no idea what way to go with respect to our future strikes and with respect to even whether we have the right to ask for any additionally strikes on a peremptory basis."

The State responded that it had no objection to the trial court granting appellant one additional peremptory strike, but did not concede that two strikes were justified. The court released the other prospective jurors waiting to be examined, and ordered that Taylor be told to report back to the court the next day. The court also told appellant's attorneys that if they wanted to reconsider their earlier exercises of peremptory strikes, that he would recall the jurors to the stand for further questioning. Appellant's attorneys declined the opportunity to reconsider their strikes.

The next day, Taylor took the stand. She stated that on reflection over the previous nights, she decided that she could not assess the death penalty. The court questioned her regarding her beliefs and understanding of the judicial system. She maintained steadfast determination that she could not participate in assessing the death penalty. Both the State and appellant were given the opportunity to question her on the matter. The State challenged Taylor for cause for her inability to assess the death penalty and follow her oath as a juror. Taylor was later excused for cause.

After she was excused, appellant renewed his request for two additional strikes. Appellant's counsel stated "... by

losing Barbara Ann Taylor, we have had to at least make our challenges based on the fact that in our opinion, she was on the jury. Now, to which jurors we would change or vote, I don't really know." The court overruled his request, stating that:

"... If each prospective juror is Voir Dired, the qualifications of that juror is [sic] considered and at that time, either side either challenges for cause or exercises a peremptory strike. To the Court, it's a specious argument to say that you're entitled to additional strikes when you're passing upon the qualifications of each prospective juror as they came before you at that time.... With reference to remarks made by Counsel yesterday, well, we might decide or we might want to strike this next person when you haven't even seen the next person or asked the person questions is utterly without merit and without any basis on [sic] the law whatsoever."

The State then stated that prospective juror Sandford was acceptable, and appellant's attorneys exercised their last peremptory strike.

The next prospective juror was called for examination. After questioning by both sides, appellant's counsel stated:

"Your honor, if it please the Court, inasmuch as the Defense is out of strikes, we would like the record to, first of all reflect that if we had available to us an additional peremptory strike, we would at this time exercise same on prospective Juror Ms. Linda Jones, realizing, of course, there's nothing in her answers that would cause us any great deal of difficulty. She's responded probably to the questions intelligently, but we feel that because of her position with the police department that there may be some almost instinctive or inherent likelihood that she would be in some way biased or prejudiced in light of the State's position. Further, with respect to both this juror and any future jurors that may be accepted, inasmuch, again, as we do not have any strikes up, we would request on this point forward that the court excuse each juror at the time

the State or Defense makes any objections or arguments or accepts those jurors so that there will not be any concepts in any of the prospective jurors' minds that anyone favors or disfavors them."

The court granted appellant's last request: counsel was permitted to have the statements made of record, and the subsequent jurors were excused at the time the objections were made.

■ Article 35.15, V.A.C.C.P. provides for the number of peremptory strikes to be given each side in a capital case. Granting a defendant additional peremptory strikes is discretionary with the trial court. In the absence of wrongdoing on the court's part, no abuse of discretion will be found when the court overrules a defendant's request for additional peremptory strikes after the defendant has exhausted those accorded him by statute. *Hafti v. State*, 487 S.W.2d 745 (Tex.Cr.App.1972), citing *Norman v. State*, 121 Tex.Cr.R. 433, 52 S.W.2d 1051, 1052 (1932). The "wrongdoing" may occur when the court deprives a defendant of a peremptory challenge by improperly overruling a defendant's challenge for cause and forcing him to use a strike on a juror who is subject to challenge for cause. *Barefoot v. State*, 596 S.W.2d 875 (Tex.Cr. App.1980), *cert. denied* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App. 1978), *cert. denied* 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979), *rehearing denied*; 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 123 (1979); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977), *cert. denied* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977); *Tezeno v. State*, 484 S.W.2d 374 (Tex.Cr.App.1972).

If the trial court has improperly denied a challenge for cause, the defendant may establish harm by showing that an "objectionable" juror was placed on the jury. *Tezeno*, supra. *Bayless v. State*, 166 Tex. Cr.R. 479, 316 S.W.2d 743 (1958); *Wolfe v. State*, 147 Tex.Cr.R. 62, 178 S.W.2d 274 (1944).

■ In the case at bar, appellant does not contend that the trial court improperly overruled any of his challenges for cause. Rather, he asserts that he would have possibly exercised his strikes differently had he known that Taylor was going to be struck. This argument is, as the trial court noted, specious: since strikes are exercised at the time the potential juror is questioned, appellant's strategy could not have been significantly undermined. Also, the trial court gave appellant the option of recalling the previous jurors upon whom appellant had exercised peremptory strikes; appellant, however, refused the offer to re-exercise his strikes. Appellant has not directed us to, nor have we found, any cases that support his right to additional strikes because his strike strategy was affected. Last, since the trial court committed no wrongdoing, it did not abuse its discretion in overruling appellant's motion for additional peremptory strikes. Appellant's first ground of error is overruled.

In ground of error number two, appellant contends that the trial court erred by improperly admitting a weapon into evidence when a proper predicate had not been laid, chain of custody had not been shown, and the prejudicial value outweighed the probative effect of admission. The record reflects that Zendal Peels' mother testified that the .25 caliber automatic pistol had been found in the armrest of appellant's car beside a puddle of blood. Ms. Peels had seen the gun on a prior occasion when appellant brought it to her house. She identified the pistol at trial as the same as the pistol appellant had shown her on the basis of marks and scratches in the grain of the wood. Appellant objected on the ground that chain of custody had not been established. The trial court overruled the objection and accepted the pistol into evidence.

■ At trial, appellant objected to admission of the pistol only on the ground that no chain of custody had been shown. Thus, we need not consider his contentions that no predicate had been laid and that the prejudicial effect of admission of the pistol outweighed its probative value. *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978).

■ With regard to the contention raised at trial, for objects such as pistols no showing of chain of custody is required if there is direct evidence at the trial that the pistol sought to be introduced is the same pistol taken from the scene. *Anderson v. State*, 504 S.W.2d 507 (Tex.Cr.App.1974). See also *Guzman v. State*, 567 S.W.2d 188 (Tex.Cr.App.1978). In the case at bar, Ms. Peels positively identified the pistol as that taken from the car, and that which she had seen previously. Thus, chain of custody was not a necessary predicate for admission of the pistol into evidence. No error is shown. Appellant's second ground of error is overruled.

In his third ground of error, appellant contends that the trial court erred in admitting five photographs that were cumulative and highly inflammatory. State's Exhibit No. 60 was a photograph reflecting the scene where the body had been found. An officer with the Montgomery County Sheriff's Office identified the photograph and described the scene. Appellant's counsel objected to admission of this photograph on the grounds that it was inflammatory. The trial court overruled the objection.

State's Exhibit No. 63 was a picture of the deceased's body after it had been found, and was identified by the same officer. Appellant's counsel objected on the grounds that the photograph was a duplicate of State's Exhibit No. 62, and that it was inflammatory. The trial court overruled the objection.

State's Exhibits Nos. 64 and 65 were photographs of the cement blocks which had been tied to the deceased's body before it was thrown in the river. One photograph showed the blocks tied to the deceased's neck and the other showed the blocks tied to the deceased's feet. Appellant's counsel objected on the ground that since the State was going to introduce the blocks themselves, the photographs were not the best evidence of the blocks. The trial court overruled the objection.

State's Exhibit No. 73 was a photograph of the deceased taken immediately before the autopsy was conducted. Appellant's counsel objected on the ground that photographs had already been introduced into evidence depicting basically the same view of the deceased's body. The State's attorney indicated that Exhibit No. 73 showed a particular profile of the body not depicted in prior photographs, and indicated certain wound tracks. The trial court overruled the objection.

The law is well settled that if a verbal description of the item, be it a body, a weapon, or a location, is admissible, then a photograph depicting the item is also admissible. *Green v. State*, 682 S.W.2d 271 (Tex.Cr.App.1984), at 292, citing *Hall v. State*, 619 S.W.2d 156 (Tex.Cr.App.1980) and *Luck v. State*, 588 S.W.2d 371 (Tex.Cr.App.1979); *Lewis v. State*, 676 S.W.2d 136 (Tex.Cr.App.1984); *Morin v. State*, 682 S.W.2d 265 (Tex.Cr.App.1983). See also *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972), and cases cited at 267, fn. 4. Only if the probative value of the photographs is very slight and the inflammatory aspects great would the trial court abuse its discretion by admitting the photographs into evidence. *Green*, supra.

■ In the case at bar, each of the photographs represented as State's Exhibit Nos. 60 through 65 contained material which was the subject of testimony of the identifying witnesses. Verbal descriptions of the items depicted were admissible. Moreover, the probative value of the material contained in the photographs exceeded their inflammatory potential. Thus, the trial court did not abuse its discretion in admitting them into evidence.

■ With reference to State's Exhibit No. 73, a pre-autopsy photograph of the deceased, cases such as *Clark v. State*, 627 S.W.2d 693 (Tex.Cr.App.1981) and *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Cr.App.1982) specifically hold that such photographs are admissible, if properly authenticated. The trial court did not err in admitting the photograph into evidence. Appellant's third ground of error is overruled.

■ In ground of error number five, appellant contends that the trial court erred when it improperly admitted a photograph of appellant's car into evidence, absent proper authentication. Appellant argues that Ms. Peels, the co-defendant's mother, admitted that the photograph was not a true and accurate depiction of the vehicle as it appeared to her. Thus, the photograph was not properly authenticated.

The record reflects that the State presented Ms. Peels with three photographs of appellant's car. The vehicle in the photographs exhibited some writing which had not been present when Ms. Peels saw it immediately after the crime. She stated that the photographs accurately depicted the vehicle, but that she had not seen the writing on the windshield. The court admitted the photographs into evidence, but ruled that if they were to be presented to the jury, the writing on the windshield would be masked or covered over.

In *Johnson v. State*, 583 S.W.2d 399, 404 (Tex.Cr.App.1979), this Court stated: "A photograph that fairly and accurately depicts its subject matter is generally admissible. Any discrepancies between the picture and the subject at its relevant time, if properly pointed out, will not render the picture inadmissible." In the case at bar, the photographs were identified to be fair and accurate representations of appellant's car. Since the discrepancies were pointed out prior to admission, the photographs were not rendered inadmissible because the witness did not recognize the writing on the windshield. Appellant's fifth ground of error is overruled.

In ground of error number six, appellant contends that since he established the affirmative defense of insanity as a matter of law, the jury's verdict was contrary to the great weight and preponderance of the evidence. The evidence presented by appellant showed that he had been diagnosed as a paranoid schizophrenic at or about the age of thirteen, and had been committed to

the Texas State Mental Hospital in Austin in 1968.

Appellant also introduced evidence showing that on the day the offense was committed, he was examined by a physician at John Sealy Hospital in Galveston, and diagnosed as having a schizo-affective disorder. Several hospital records were introduced indicating that even five days after the offense, appellant exhibited mentally inappropriate behavior.

Dr. Robert F. Sarmiento was called by the defense and stated that on the day of the offense, appellant was unable to conform his conduct to the requirements of law. Appellant's ingestion of alcohol and drugs exacerbated the situation.

Dr. Sarmiento testified that appellant was a paranoid schizophrenic with a borderline personality, and was unable to control his anger. He added that appellant's mental disorders prevented him from conforming to the law and knowing that his conduct was wrong.

Dr. Sarmiento surmised that given appellant's unstable mental condition, the violence on the night of the offense would have evoked or intensified appellant's feelings of anger. When Peels struck the deceased, appellant became frightened and angry; his feelings were intensified by the alcohol and drugs. When coupled with appellant's unstable condition, disorientation resulted. In response to the disorientation, appellant constructed defenses to the violence of the night, such as his claim that he had killed a dog when questioned about the blood on the car.

The State called several witnesses to rebut appellant's claim of insanity. Dr. Jerome Brown testified that he examined appellant on September 23, 1981, and administered several intelligence quotient tests. He also questioned appellant about the offense. In his opinion, appellant did not suffer from any mental disease or defect which prevented him from conforming to the requirements of the law. Dr. Kayla Paul was also called as a State's witness. She had interviewed appellant at the John Sealy Hospital on the day of the offense.

In her opinion, appellant was free from paranoid or suicidal ideations.

The State also called Dr. John Nottingham, who examined appellant on August 19, 1981. He testified that in his opinion, appellant was not suffering from any mental defect which would have interfered with his ability to appreciate the wrongfulness of the crime at the time it was committed, and that appellant was sane at the time of the offense.

Appellant claims that given the voluminous evidence presented on the issue of his sanity at the time of the offense, the jury verdict is against the great weight and preponderance of the evidence and requires reversal. Initially, in *Van Guilder v. State*, (Tex.Cr.App. No. 899–84, delivered Nov. 6, 1985), this Court held that a reviewing court should not evaluate the facts in a case and reverse it on the court's belief that a jury finding is against the great weight and preponderance of the evidence since such action "misconceives the burden of proof required for criminal convictions and usurps the function of the jury." slip op. at 4.

The burden of proof on the affirmative defense of insanity is set forth in the Texas Penal Code, Sec. 2.04(d) and provides:

"If the issue of the existence of an affirmative defense is submitted to the jury, the Court shall charge that the defendant must prove the affirmative defense by a preponderance of the evidence."

In *Van Guilder* supra, slip op. at 6, we set forth the standard of review to be used when the sufficiency of evidence regarding an affirmative defense is questioned:

"[W]e hold that in reviewing a case involving an affirmative defense, the court of appeals must review the evidence on the affirmative defense by looking at the evidence in the light most favorable to the implicit finding by the jury with respect to such affirmative defense and then determine, by examining all the evidence concerning the affirmative defense, if any rational trier of fact could

**662**

have found that the defendant failed to prove his defense by a preponderance of the evidence.... There must be no reweighing or reclassifying of the evidence by the appellate court."

This standard applies to this Court's review of evidence sufficiency on affirmative defenses in direct appeals of death penalty cases.

■ In the case before us, the State presented evidence to rebut appellant's experts' claims that he was insane at the time of the offense. "When there is evidence on both sides of the insanity issue it is much more difficult in reviewing a case to find that the jury acted irrationally." *Id.*, at ——. When viewed in the light most favorable to the jury's implicit rejection of appellant's insanity assertions, and when all of the insanity evidence is considered, we find that the jury could have found that appellant failed to prove his affirmative defense by a preponderance of the evidence. See *Graham v. State,* 566 S.W.2d 941 (Tex.Cr.App.1978). Appellant's sixth ground of error is overruled.

In Ground of Error Number Seven, appellant contends that the trial court committed reversible error when it overruled his motion for mistrial based on cumulative hearsay. Appellant states that there were numerous instances when the prosecutor elicited improper verbal evidence, and that the record is replete with nonresponsive answers and hearsay testimony. He alleges that there are "fifty-plus examples of hearsay," and then lists thirty-two page references. Nowhere does he specifically set forth the particular instances he asserts were objectionable.

■ It is well settled that the mere reference to pages in the record does not sufficiently identify testimony, the objections thereto, and the court's rulings thereon to constitute a ground of error. Art. 40.09, Sec. 9, V.A.C.C.P.; *Green v. State,* 682 S.W.2d 271 (Tex.Cr.App.1984); *Reyes v. State,* 647 S.W.2d 255 (Tex.Cr.App.1983); *Cook v. State,* 611 S.W.2d 83 (Tex.Cr.App. 1981); *Brown v. State,* 605 S.W.2d 572 (Tex.Cr.App.1980); *Arivette v. State,* 513

S.W.2d 857 (Tex.Cr.App.1974). The rules of briefing grounds of error apply to this Court's review of capital murder cases. *Hawkins v. State,* 613 S.W.2d 720 (Tex.Cr. App.1981), *cert. denied* 454 U.S. 919, 102 S.Ct. 422, 70 L.Ed.2d 231 (1981), *rehearing denied* 454 U.S. 1093, 102 S.Ct. 660, 70 L.Ed.2d 632 (1981).

■ In the interests of justice, however, we have examined the thirty-two pages referred to by appellant for objections. Twenty-seven of the pages referred to by appellant contained objections that were not ruled upon, and when the objection was made, the witness had not answered the objectionable question. Thus, no error was preserved, *Bryant v. State,* 570 S.W.2d 921 (Tex.Cr.App.1978), and since the witnesses did not answer the questions, no prejudicial matter was improperly placed before the jury.

In one instance, a detective called by the State stated that "We had been advised en route down there that Mr. Thomas had been taken into——." Appellant objected on hearsay grounds, but no ruling was obtained. Even if appellant had secured a ruling, and the trial court had erred by overruling the objection, hearsay evidence improperly admitted over objection will constitute reversible error only if there is a reasonable possibility that the evidence is prejudicial or may have contributed to the conviction. *Goodman v. State,* 701 S.W.2d 850 (Tex.Cr.App. 1985), at 863, citing *Urick v. State,* 662 S.W.2d 348 (Tex.Cr.App.1983)); *Ward v. State,* 657 S.W.2d 133 (Tex. Cr.App.1983); and *Garrett v. State,* 641 S.W.2d 232 (Tex.Cr.App.1981). The evidence admitted in the instant case was not so prejudicial so as to constitute reversible error.

In another reference to the record, a witness stated "I also said and James said the same thing—get out of the car." Appellant objected on the grounds that the witness was volunteering information. Again, no ruling was secured. We find that even if the evidence was improperly admitted, it was not so prejudicial to appel-

lant so as to require reversal. See *Goodman,* supra.

■ In the remaining three page references, appellant refers to evidence elicited from the prosecutor regarding a conversation between appellant and another person which was overheard by a third party. The conversation involved appellant's request to terminate his relationship with his wife (or girlfriend) when confronted about his claim that he was bitten by a dog. When the State sought to elicit the information, the jury was excused and the trial court inquired as to the State's intentions. The State contended that the evidence was not being offered for the truth of the matter asserted, but merely to appellant's response to the confrontation and his knowledge or intent as to the crime itself. The trial court agreed that the material was not hearsay and permitted its introduction.

When the jury was returned, however, the questioning reveals that the prosecutor never elicited any hearsay responses regarding the matter. Thus, even though the trial court had ruled the evidence admissible, the jury never heard it. Appellant may not complain of evidence that was never placed before the jury. Appellant's seventh ground of error is overruled.

In his eighth ground of error, appellant contends that the trial court erred in overruling his objection to the introduction of hearsay at the punishment phase of trial. The record shows that during the punishment phase, the State called Wesley King, a criminal investigator for the Chambers County Sheriff's Department, who testified concerning an impersonation of a police officer charge levied against appellant. During voir dire examination of the witness, *outside of the jury's presence,* appellant objected to the witness' testimony on the matter since it was based on hearsay. The trial court directed the prosecutor not to introduce any hearsay before the jury. The jury was returned and the witness was questioned only about what he himself observed; he gave no hearsay testimony. Thus, no improper evidence was placed before the jury and appellant was not harmed by any court action.

■ In the same ground of error, appellant complains of the trial court's admission during the punishment stage of evidence regarding an unadjudicated charge against appellant for carrying a weapon. This Court has previously held that proof of an unadjudicated offense is admissible during the punishment phase of a capital murder case. *Rumbaugh,* supra at 754, citing *Williams v. State,* 622 S.W.2d 116 (Tex.Cr.App.1981) and *Garcia v. State,* 581 S.W.2d 168 (Tex.Cr.App.1979). Appellant's eighth ground of error is overruled.

In ground of error number nine, appellant contends that the trial court committed reversible error in admitting evidence derived from appellant's arrest since there was no probable cause to support issuing an arrest warrant, "in direct contravention of his Constitutional rights." The record shows that a warrant for appellant's arrest was issued based upon the affidavit of Detective J.J. Freeze, a detective with the Harris County Deputy Sheriff's Office. In the affidavit, Freeze stated that he had been informed by Zendal Peels, an eyewitness who had no criminal record, who was reputably employed, and who had given a sworn statement, that appellant had:

> "[I]ntentionally and knowingly restrain[ed] ... [the deceased] ... by using and threatening to use deadly force with intent to prevent the liberation of ... [the deceased], and with intent to inflict bodily injury on [the deceased]."

In *Bellah v. State,* 653 S.W.2d 795 (Tex.Cr.App.1983), this Court acknowledged the federal "totality of circumstances" test for evaluating information in warrants as set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *rehearing denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). Before the United States Supreme Court broadened the test, we adhered to the requirement that the warrant exhibit that the information contained therein was reliable, and that the person supplying that information was reliable. See *McClinton v. State,* 647 S.W.2d

400 (Tex.App.—Fort Worth 1983). In *Frazier v. State*, 480 S.W.2d 375 (Tex.Cr.App. 1972), at 379–380, this Court held:

"... [T]he requirements of *Aguilar v. Texas*, supra, are met when the hearsay information in an affidavit is derived from named persons who supply detailed information suggesting direct knowledge of the information which they have given." (citations omitted)

■■■ We find that in the case at bar, the information contained in the affidavit was sufficient to provide the magistrate with probable cause and issue the arrest warrant under the pre-*Gates* standard, and certainly sufficient under present United States constitutional law. Appellant's ninth ground of error is overruled.

In his final ground of error, appellant contends that there is insufficient evidence to support a finding of a tendency to commit future acts of violence, and that the sentence is grossly disproportionate to the crime committed. Appellant claims that the evidence is insufficient since it shows that he was largely directed by his co-defendant and was suffering under mental strain at the time of the offense.

During the punishment phase of trial, the State introduced evidence that appellant had been convicted of aggravated assault on a police officer, grand larceny and petit larceny, impersonating a peace officer, and two burglary convictions in Louisiana. The State also presented evidence of unadjudicated offenses involving carrying a weapon, assault on a boy with a pool cue on the day before the instant offense, and appellant's claim, made while he was pointing a pistol at a police officer, that he would shoot the officer.

■■■ In deciding whether a defendant is likely to commit future acts of dangerousness, the jury is permitted to consider the facts of the crime itself. *Barney v. State*, 698 S.W.2d 114 (Tex.Cr.App.1985); *Andrade v. State*, 700 S.W.2d 585 (Tex.Cr. App. No. 69,421, delivered Sept. 25, 1985); *Cannon v. State*, 691 S.W.2d 664 (Tex.Cr. App.1985); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Smith v. State*, 676 S.W.2d 379 (Tex.Cr.App.1984); *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr.App.1983). Thus, we may evaluate evidence presented during the guilt phase of trial in addition to that presented at the punishment stage to determine whether the evidence is sufficient to support the jury's finding.

As set forth in our disposition of appellant's fourth ground of error, appellant first encountered the deceased when her car broke down. After fixing the car, and escorting her to her home, he and Peels were invited inside. After consuming drugs and alcohol, Peels struck the deceased, rendering her unconscious. Both appellant and Peels placed her body in the car and drove off. When she regained consciousness several times, Peels struck her. When she regained consciousness a final time, appellant took deliberate aim and shot her in the head. Afterward, he and Peels, with some difficulty, succeeded in throwing her body into the San Jacinto River.

In mitigation, appellant presented several witnesses during the punishment phase of trial. Appellant called his ex-wife to the stand, who stated that he liked animals but had abused two dogs on several occasions, and needed psychiatric help. Appellant also called Phillip Decker, whose stepson had married appellant's mother. He testified that appellant had been a normal child, and had not exhibited any particular violence. Next, appellant called Claudia Riley, who knew appellant when he was a resident at the Christian Shelter in Salisbury, Maryland. She stated that appellant had developed several relationships while at the shelter, but refused to look for a job. She did not believe that appellant should receive the death penalty for the instant offense. Next, appellant called Reverend Laurie Wagner, who was on the staff of the Christian Shelter, who testified that appellant could contribute something to the world. Loree Garza, appellant's sister, was called to the stand. She stated that her mother had been forced to chain appellant to a bed to keep him from abusing her, and that coping with appellant had been

hard on her. He had also slapped Garza around a few times.

The next witness called by appellant at the punishment phase was Cindy Tucker, who was a friend of appellant's sister. She stated that appellant had been nice to his mother when she was at their house. The next witness called was Rita Thomas, appellant's mother. She testified that she had trouble handling appellant. She also testified regarding appellant's stays in various mental hospitals. The next witness called on appellant's behalf was Milo Thomas, appellant's father. He testified that appellant liked animals. The witness had not seen appellant commit acts of violence.

The last witness called on appellant's behalf was Dr. Sarmiento, who testified about the difficulty in predicting future dangerousness. He also testified that appellant could be treated for some of his psychological disorders.

We find that the facts of the offense itself, along with the evidence introduced at the punishment phase of the trial, provide sufficient support for the jury's finding that appellant would be a continuing threat to society. Although appellant presented evidence that showed he had led a difficult childhood, and could respond to drug therapy, this evidence did not surmount the evidence showing his future dangerousness to the extent that the jury's verdict was rendered improper.

Appellant also claims that the verdict is grossly disproportionate to the crime he committed. He contends that the jury was not allowed to consider the totality of the circumstances surrounding the crime as well as mitigating factors. Appellant does not state that there was any evidence that he was not permitted to present to the jury. Rather, he implies that the jury could not have considered the evidence given the penalty he was assessed.

Appellant was properly charged with capital murder. See V.T.C.A. Penal Code, § 19.03. Thus, he faced a sentence of death or life imprisonment, at the jury's option, on a finding of guilt. The Texas capital murder statute has been held constitutional because, among other features, it permits the defendant to present evidence of mitigation. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr. App.1980). Absent a claim that appellant was deprived of the opportunity to present evidence of mitigation, and given the sufficiency of the evidence to support the verdict, the sentence was not grossly disproportionate to the offense he committed. Appellant's tenth ground of error is overruled.

The judgment of the trial court is affirmed.

CLINTON, J., concurs in the result.

TEAGUE, J., dissents to the disposition of Ground of Error # 1.