

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00092-CR

ADRIAN LEX PARKER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

## FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Adrian Lex Parker appeals his conviction for murder.  *See* Tex. Penal Code Ann. § 19.02(b) (West 2011).  In three points, Parker argues that the evidence is insufficient to support the jury's verdict and that the trial court abused its discretion by admitting evidence that Parker could not legally possess a firearm and evidence of Parker's drug activity.  We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Parker and Richard Sutton had a dispute about some money and a Jeep that Parker had borrowed from Sutton. Sutton called Parker and told him that he wanted his Jeep back. Sometime after midnight, Sutton and his friend Tom Roberts drove to Darrell Pace's house, where Parker was staying with Sutton's sister Janie Davis, to confront Parker. No one was there when Roberts and Sutton arrived so they waited.

At the time, Parker was on his way to Zachary Gregg's home, where Sutton was staying, to return the Jeep to Sutton. Pace, his girlfriend Brittany Banks, and Davis followed Parker in Pace's truck, and after leaving the Jeep at Gregg's house, the four returned to Pace's house in Pace's truck. Sutton got out of Roberts's car, walked up to Pace's truck, and told Parker to "get his f----- ass out." Parker got out, pulled a gun, walked toward Sutton, pointed the gun at Sutton's face, and pulled the trigger. The gun did not fire. Sutton told Parker that he "really f----- up." Pace intervened and told Sutton to leave because Pace did not "need this" on his property. Parker then took off running towards a tree line on Pace's property.

Sutton did not go after Parker. He was very upset and told Pace, Banks, and Davis, "[T]he m-----f----- [Parker] should have . . . blown my head off because . . . he won't never have no peace from here on out." Davis and Pace calmed Sutton down, and as Sutton was walking back to Roberts's car to leave, Parker

2

emerged from the tree line and fired a gun at Sutton. After firing three times, Parker ran away. Sutton died from the gunshot wounds inflicted by Parker.

At trial, Parker did not deny that he shot Sutton. Instead, his defensive theory was that he acted in self-defense. He presented evidence that Sutton had a reputation as a fighter, was angry that Parker had taken his Jeep and owed him money, was stressed out the day prior to the shooting and wanted his money so he could leave town, and was on methamphetamine at the time of his death. The State presented evidence, in response to Parker's self-defense claim, that Parker was not entitled to possess a firearm when he shot Sutton. The jury charge included an instruction on self-defense.

A jury convicted Parker of murder, and after Parker pleaded true to the enhancement paragraph, the jury assessed his sentence at fifty-five years' imprisonment and a $10,000 fine. The trial court sentenced him accordingly.

### III. SUFFICIENCY OF THE EVIDENCE

In his third point, Parker argues that the evidence is insufficient to support the jury's verdict that he murdered Sutton and to support the jury's rejection of his self-defense theory.

After the defendant has introduced some evidence supporting a defense, the State bears the burden of persuasion to disprove it. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (explaining that a conviction produces an implicit finding against the defensive theory). This burden does not require the State to introduce evidence disproving the defense; rather, it requires the

3

State to prove its case beyond a reasonable doubt. *Id.* In reviewing a challenge to the sufficiency of the evidence to support a jury's rejection of a defense to prosecution, we use the same standard used in reviewing the sufficiency of the evidence to support a verdict of guilt, looking at the sufficiency of the evidence to support both the verdict as well as the rejection of the defense. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). To determine the sufficiency of the evidence to disprove a nonaffirmative defense, the appellate court asks "whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt." *Id.*

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(a) (West 2011). A person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a) (West 2011).

In arguing that the evidence was insufficient, Parker focuses exclusively on the admission of evidence that he was not legally allowed to possess a firearm; he argues, "This record would be a clean presentation of the elements of the

4

offense charged and the basis for the jury to consider self[-]defense, but for the Court permitting testimony by the State . . . that essentially described [Parker] as a person acting unlawfully . . . ." But when performing a sufficiency review, we must consider all the evidence admitted at trial, even improperly admitted evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

At Parker's trial, Sutton's sister Davis testified that on the day before Sutton's murder, he went to Pace's house to collect a debt that Pace owed him. Sutton was very upset and said that he needed his money because he wanted to leave town. Parker offered to pay the debt to Sutton on Pace's behalf. Parker and Sutton left in Sutton's Jeep, and Parker returned to Pace's house later that evening in Sutton's Jeep without Sutton. The Jeep had overheated, and Parker fixed it at Pace's house; he then left in the Jeep with Pace, Banks, and Davis following him in Pace's truck. They drove to Gregg's house, where Sutton was supposed to be, to return the Jeep. Sutton was not there, but Davis heard Gregg ask Parker whether he had Sutton's money. Davis did not see Parker give Gregg any money. Pace, Parker, Banks, and Davis returned to Pace's house, where they found Roberts and Sutton waiting for them. Davis testified that Sutton approached Pace's truck and told Parker to get out. She said that Parker got out, pointed a gun at Sutton's face, and pulled the trigger. Davis heard the gun click. When Parker ran off into the woods, Sutton did not follow Parker and instead began arguing with Pace and Davis. Sutton was angry with Davis for

5

being with Parker and for letting him get out of the truck with a gun, Sutton was angry with Pace for letting Parker "come at him like that," and Sutton was angry with Parker for trying to shoot him. Davis told Sutton that she did not realize that Parker had a gun. After Sutton calmed down and was about to leave, Davis saw Parker walk back into the yard from the woods. Davis testified that Sutton looked in Parker's direction after hearing the first shot from Parker's gun. Parker walked quickly towards Sutton while shooting the gun three times; he then turned and ran back into the woods. Davis testified that Parker was approximately thirteen to twenty feet from Sutton when he fired the shots.

Davis testified on cross-examination that she and Sutton had fought in the past and that he had hit her with his fists about three times in the last ten years. She testified that Sutton was a large man, weighed approximately 230 pounds, and was about 6'4". Davis testified that Sutton seemed very stressed when he showed up at Pace's house the morning prior to his death. She testified that she had told police after Sutton's death that he "was in full-blown panic" mode and wanted to get out of town. Davis also told investigators that the day before his murder, Sutton had called Parker and told him that he wanted "his f'ing Jeep." Davis told investigators that Sutton was irritable and had no patience.

Parker called Roberts to testify to support Parker's self-defense theory. Roberts said that when Pace drove up to his house, Sutton told Roberts to stay in the car and to "stay out of it" no matter what happened. Roberts saw Sutton and Parker argue and saw Sutton chase Parker around Pace's truck two or three

6

times. Roberts saw Sutton flinch twice like Parker had "[taken] a swing at him," or like he was avoiding a bee; Roberts did not see Parker with a gun. Roberts then saw Parker run into the woods. After Sutton and Pace argued for five or ten minutes, Roberts saw Parker walk back out of the woods. Roberts testified that when Sutton saw Parker walking towards him, Sutton began walking quickly in Parker's direction. Roberts said that Sutton and Parker were shouting back and forth at each other and that Parker then began shooting. From his position in his car, Roberts could not tell how far apart Sutton and Parker were. Roberts testified that he knew that Sutton had a "reputation as a fighter," but he also testified that he was a "lifelong friend" of Sutton and had never seen him fight.

Cooke County Sheriff's Sergeant Investigator Cody Patrick testified that he had received witness statements that Parker "needed to defend himself or he would not be around," implying that Sutton would have killed Parker. The deputy medical examiner with the Tarrant County Medical Examiner's office testified that Sutton had methamphetamine in his blood at the time of his death, although the deputy medical examiner determined that the bullet wounds were the cause of death.

Viewing all of the evidence in the light most favorable to the prosecution, the evidence demonstrates that when Sutton first confronted Parker at Pace's house, Parker pointed a gun at Sutton and pulled the trigger. After the gun did not fire, Parker escaped the situation and any imminent threat, and Sutton did not go after him. As Sutton was leaving Pace's house five or ten minutes later,

7

however, Parker came out of the woods and walked towards Sutton while firing a gun from thirteen to twenty feet away. From this evidence, a rational trier of fact could have found that Parker murdered Sutton and also could have found that Parker did not reasonably believe that deadly force was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by Sutton. *See* Tex. Penal Code Ann. § 9.32(a)(2)(A); *Saxton*, 804 S.W.2d at 914. We hold that the evidence was sufficient to support the jury's verdict, and we overrule Parker's third point.

## IV. EVIDENCE THAT PARKER COULD NOT LEGALLY POSSESS A FIREARM

In his second point, Parker argues that the trial court abused its discretion by allowing the State to present evidence that he could not legally possess a firearm.

Outside of the jury's presence, the parties argued whether self-defense was raised by the evidence and whether the State could present evidence that Parker could not lawfully carry a handgun because he was a felon.[2] The trial

---

[2]In 2007, the legislature amended the deadly force statute to delete the requirement that a person retreat before using deadly force but then added provisions specifying when a person does *not* have the duty to retreat. *See* Tex. Penal Code Ann. § 9.32; *Morales v. State*, 357 S.W.3d 1, 4–5 (Tex. Crim. App. 2011); *Whitney v. State*, 396 S.W.3d 696, 701 (Tex. App.—Fort Worth 2013, pet. ref'd). Specifically, subsections (c) and (d) provide that a person is not required to retreat before using deadly force, and a factfinder may *not* consider the actor's failure to retreat, when the person has a right to be present at the location where the deadly force is used, has not provoked the person against whom the deadly force is used, and *is not engaged in criminal activity at the time the deadly force is used*. Tex. Penal Code Ann. § 9.32(c)–(d). Parker argued at trial that he was not requesting an instruction on the "presumption" contained in subsections (c)

8

court ultimately ruled that the State could present limited evidence that Parker was not legally authorized to carry a gun but could not present evidence of the reason why—that he is a convicted felon. Investigator Chad Mathes of the Gainesville Police Department testified that based on his review of the public records regarding Parker, Parker was not entitled to possess a firearm when he shot Sutton.

We need not decide whether the trial court abused its discretion by admitting this testimony because, even assuming the testimony was inadmissible, we apply rule 44.2(b) and disregard the alleged error if it did not affect Parker's substantial rights. *See* Tex. R. App. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *see also James v. State*, 335 S.W.3d 719, 726 (Tex. App.— Fort Worth 2011, no pet.) (noting that the erroneous admission of evidence is generally nonconstitutional error). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance

and (d), and the jury was not instructed on the no-duty-to-retreat provisions. Nevertheless, the State argued that evidence that Parker was not legally entitled to possess a firearm was still relevant and admissible to show that Parker was engaged in criminal activity so that the no-duty-to-retreat presumption did not apply.

that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

We have already analyzed the sufficiency of the evidence in determining that the jury could have reasonably concluded that Parker murdered Sutton and that Parker was not justified in using deadly force against Sutton. Regarding the character of the alleged error, the trial court did not allow the State to present evidence that Parker was a convicted felon or of the specific felony offense for which he was convicted; the only evidence admitted was an investigator's testimony that he had reviewed the public records and had determined that Parker was not entitled to possess a firearm when he shot Sutton. The jury was instructed on the law of self-defense under penal code section 9.32 but was not instructed on the no-duty-to-retreat provisions of penal code section 9.32, which would require that Parker was not engaged in criminal activity at the time that he

10

used deadly force. *See* Tex. Penal Code Ann. § 9.32. During closing arguments, the State referred to the fact that Parker could not possess a gun several times, but the State did not claim that this made the self-defense justification unavailable to Parker. Instead, the State's theory at trial focused on the fact that after the first altercation between Parker and Sutton—during which Parker pointed a gun at Sutton and pulled the trigger but the gun did not fire— and after Parker ran into the woods, "he was safe" but decided to return and shoot Sutton.

We cannot say that, in the context of the entire case against Parker, evidence that he was not "entitled to possess a firearm" when he shot Sutton likely moved the jury from acquitting Parker to convicting him. *See* Tex. R. App. P. 44.2(b); *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (stating that in determining harm, we may ask whether there is a reasonable possibility that the error "moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question"), *cert. denied*, 532 U.S. 944 (2001); *see also Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008) (assuming, without deciding, that trial court erred in admitting evidence but holding that "such error was harmless in light of the overwhelming evidence of guilt shown by other evidence"), *cert. denied*, 129 S. Ct. 1037 (2009). Thus, even assuming error, we disregard it. *See* Tex. R. App. P. 44.2(b). We overrule Parker's second point.

11

## V. EVIDENCE OF PARKER'S DRUG ACTIVITY

In his first point, Parker argues that the trial court abused its discretion by allowing the State "to allude to [Parker's] drug activity" in violation of his motion in limine.[3]

Prior to trial, Parker filed a motion in limine regarding evidence of his drug use and drug sales. Parker argued that the extraneous offense evidence was not relevant to a material issue in the case other than character conformity and was more prejudicial than probative. *See* Tex. R. Evid. 403, 404(b). The trial court granted the motion as to evidence of certain statements and actions by Parker on specific dates regarding his drug sales and purchases. The trial court denied the motion as to "general statements" that Parker used and sold drugs or that he and Sutton had used drugs together.

---

[3]Parker also complains in his first point of the trial court's admission of evidence that he was not entitled to possess a firearm, but we addressed this contention in addressing his second point above.

Regarding evidence of his "drug activity," Parker fails to identify any specific testimony of which he complains. It is well settled that "mere reference to pages in the record does not sufficiently identify testimony, the objections thereto, and the court's rulings thereon to constitute a ground of error." *Thomas v. State*, 701 S.W.2d 653, 662 (Tex. Crim. App. 1985); *see Thierry v. State*, 288 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (noting that an appellate court is not required to search through the record for support of an appellant's assertion of error). Nevertheless, having reviewed the record and having determined that Parker's complaint centers around certain objected-to testimony by Gregg, we will address the merits of Parker's contention as it relates to this testimony. To the extent that his first point may be construed as an argument about any other evidence of other drug activity that we have not addressed, we overrule it as inadequately briefed. *See* Tex. R. App. P. 38.1.

12

At trial, Gregg testified that Parker paid off Pace's debt to Sutton with money that Parker had obtained by selling "an ounce of dope" the night before. Defense counsel objected that the evidence was irrelevant and more prejudicial than probative, and the trial court overruled the objections but granted defense counsel a running objection to that type of testimony.[4] Gregg then testified that Parker asked to borrow the money that he had paid Sutton so that Parker could buy another ounce of "dope." Gregg explained that when Parker showed up at Gregg's house to return Sutton's Jeep, Parker told Gregg that he did not have the money to repay Sutton because Parker had to pay the man from whom he had purchased methamphetamine.

Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). But extraneous offense evidence is admissible under both Rules 403 and 404(b) if that evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and the probative value of the evidence is not substantially outweighed by unfair prejudice. *See* Tex. R. Evid. 403, 404(b); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Extraneous offense evidence may be admissible for

---

[4]A motion in limine is not a ruling that excludes evidence and does not preserve error, but Parker properly preserved error by objecting to the admissibility of this testimony when it was offered. *See* Tex. R. App. P. 33.1(a); *Thierry*, 288 S.W.3d at 86–87.

13

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Tex. R. Evid. 404(b); *Devoe*, 354 S.W.3d at 469.

Evidence of another crime, wrong, or act also may be admissible as same-transaction contextual evidence where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others." *Devoe*, 354 S.W.3d at 469; *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Devoe*, 354 S.W.3d at 469; *Wyatt*, 23 S.W.3d at 25. But, under rule 404(b), same-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Devoe*, 354 S.W.3d at 469. A trial court's ruling on the admissibility of extraneous offense evidence is reviewed under an abuse-of-discretion standard. *Id.*

Here, we agree with Parker that evidence that he had money to repay Pace's debt to Sutton from selling drugs and evidence that Parker then borrowed that money back from Sutton to purchase more drugs was not relevant to a fact of consequence in the case and was inadmissible. *See* Tex. R. Evid. 404(b); *Devoe*, 354 S.W.3d at 469. The facts surrounding Sutton's murder made sense without bringing in evidence of Parker's purchasing and selling drugs with the

14

money he gave to and then borrowed from Sutton. *See Devoe*, 354 S.W.3d at 469. The extraneous offense evidence was not "necessary to the jury's understanding of the offense," nor did the extraneous offenses rebut any defensive theory presented by Parker. *See id.*; *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (stating that evidence that is relevant to a noncharacter conformity fact of consequence in the case may be admissible in rebutting a defensive theory). We will address whether the admission of this evidence affected Parker's substantial rights under the nonconstitutional error standard of rule 44.2(b). *See* Tex. R. App. P. 44.2(b); *see Mosley*, 983 S.W.2d at 259; *James*, 335 S.W.3d at 726.

Reviewing the record as a whole, we have fair assurance that evidence of Parker's drug sale and purchase in the days before Sutton's death did not have a substantial and injurious effect or influence on the jury's verdict. *See King*, 953 S.W.2d at 271. Evidence of drug use, namely methamphetamine use, was presented to the jury from the beginning of the case. Even before the presentation of evidence, during opening statements, the State referred to Pace's house as "a drug den," and defense counsel argued that Sutton was the one using methamphetamine on the night of his death. The jury heard Davis's unobjected-to testimony that she knew Brittany Banks from the "dope world" and has a history of drug offenses, and heard Investigator Patrick's testimony that the sheriff's department officers all knew that Pace's property was connected with methamphetamine use. The record further reflects that defense counsel

15

questioned several witnesses about their drug use, and evidence was presented that Parker was not on methamphetamine when he shot Sutton. Additionally, Parker concedes that he shot Sutton, and we have already addressed the sufficiency of the evidence to support the jury's rejection of his self-defense claim above. Considering the evidence of Parker's drug sale and purchase in connection with other evidence in the case, we cannot say that there was a reasonable possibility that the complained-of evidence moved the jury from a state of nonpersuasion to one of persuasion regarding whether Parker murdered Sutton. *See* Tex. R. App. P. 44.2(b); *Wesbrook*, 29 S.W.3d at 119; *see also Motilla*, 78 S.W.3d at 355. We overrule Parker's first point.

## VI. CONCLUSION

Having overruled Parker's three points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

LIVINGSTON, C.J. and GABRIEL, J. concur without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 30, 2013

16