NO. 12-07-00433-CR

 

                         IN THE COURT
OF APPEALS         

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER,
TEXAS

JAMES LLOYD KING, JR.,                             '                 APPEAL
FROM THE 294TH

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        '                 VAN ZANDT
COUNTY, TEXAS

                                                                                              
                                                                 

                                                      MEMORANDUM
OPINION

Pursuant
to Texas Rule of Appellate Procedure 50, we withdraw our opinion issued on
August 19, 2009 and substitute the following opinion.  James Lloyd King, Jr.
appeals his conviction for manslaughter.  In six issues, Appellant argues that
the evidence is insufficient to support the conviction, that the trial court
erred in allowing certain evidence and in its instructions to the jury, and
that the State failed to meet its obligations regarding the collection of
evidence.  We affirm.

 

Background

            Appellant
was getting his rifle out of Delbert Ray Cox=s
truck when the rifle discharged, killing Cox.  Appellant and Cox were friends. 
Following the shooting, Appellant tied Cox to the bumper of his truck and
dragged him to a pond where he sometimes disposed of trash.  Jimmie Marie
Wilson was with the men when Appellant shot Cox.  She drove to another location
and called the police.  Wilson told the police that Appellant had deliberately
aimed his rifle at Cox and shot him.  The police responded and ultimately found
Cox=s body in the
pond.  Appellant was not at the scene, and the police did not recover the
rifle.

A
Van Zandt County grand jury indicted Appellant for the murder of Cox.  He
pleaded not guilty and a trial was held.  

Wilson
testified at trial that she was talking with Appellant=s companion while Appellant was removing his
personal items from the truck.  Wilson said she saw Appellant reach into the
vehicle, get the rifle, put it on his hip, point it at Cox, and shoot him in
the back.  Appellant adduced testimony through the investigating officers that
Wilson had many aliases, and numerous criminal convictions.  The police
officers who investigated the shooting all knew Wilson through their law
enforcement work.

The
medical examiner who performed the autopsy on Cox put crucial portions of
Wilson=s testimony in
doubt.  The examiner testified that Cox was shot in the chest, not in the back
as Wilson had said.  The medical examiner also testified that the bullet
traveled in a slightly downward manner.  She stated that the bullet entered Cox=s right shoulder; passed
through his collar bone, the upper lobe of his right lung, and his aorta; and
exited his back, shattering the right third through fifth ribs. 

Appellant=s father testified that he
had given the rifle to Appellant.  He testified that the rifle had been damaged
by being driven over, that it had spontaneously misfired on one occasion, and
that he told Appellant about the problem with the rifle.  Appellant testified
that his father had told him the rifle had been run over and the safety was
very difficult to set.  He thought his father meant that the gun had a Ahair trigger on it.@  Appellant did not
understand that his father meant the gun would discharge on its own.  

Appellant
testified that he was taking the rifle out of the truck because he had been
driving Cox=s truck
and was trading back with him for his own vehicle.  He testified that the rifle
discharged as he was removing it from the truck, causing the fatal injury to
Cox.  He stated that he did not intentionally shoot Cox.  Appellant
acknowledged that aiming a loaded gun at someone was dangerous.  Appellant also
contended that Wilson could not have seen any of the events because she was
talking to a woman on the far side of the truck when the shooting occurred and
because her line of sight was blocked by the truck.  Appellant admitted that he
tied a rope to Cox=s
ankle, dragged his body to a pond, threw the body in, and covered it with a
piece of metal.  He testified that he threw the rifle into the same pond.

To
rebut Appellant=s
accident defense, the State offered evidence that Appellant had been previously
convicted of the offense of deadly conduct.  Appellant objected to this
evidence.  Following a hearing, the trial court allowed the victim in the
deadly conduct case to testify.  

The
trial court instructed the jury on the offenses of murder and manslaughter. 
The jury convicted Appellant of manslaughter and assessed punishment at
imprisonment for fifteen years.  This appeal followed.

  

Legal and Factual Sufficiency

In
his first and second issues, Appellant argues that the evidence is legally and
factually insufficient to support a manslaughter conviction.

Standards
of Review

The
due process guarantee of the Fourteenth Amendment requires that a conviction be
supported by legally sufficient evidence.  See Jackson v. Virginia,
443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); Ross
v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); Willis v.
State, 192 S.W.3d 585, 592 (Tex. App.-Tyler 2006, pet. ref=d).  Evidence is not
legally sufficient if, when viewing the evidence in a light most favorable to
the verdict, we conclude that no rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; see also Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

While
legal sufficiency is all that is required by the U.S. Constitution, the Texas
Court of Criminal Appeals has determined that the Texas Constitution requires
review of the factual sufficiency of the evidence.  Clewis v. State,
922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996).  In conducting a factual
sufficiency review of the evidence, we must first assume that the evidence is
legally sufficient.  Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We review the factual sufficiency of the evidence to
determine whether, considering all the evidence in a neutral light, the
evidence supporting the conviction is too weak to withstand scrutiny or the
great weight and preponderance of the evidence contradicts the jury=s verdict to the extent
that the verdict is clearly wrong and manifestly unjust.  See Watson v.
State, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. 2006).  A verdict will
be set aside Aonly if
the evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.@ 
Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002).  A
clearly wrong and manifestly unjust verdict occurs where the jury=s finding Ashocks the conscience@ or Aclearly demonstrates bias.@  Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 

The
fact that we might harbor a subjective level of reasonable doubt is not enough
to overturn a conviction that is founded on legally sufficient evidence.  See
Watson, 204 S.W.3d at 417.  Although we are authorized to disagree
with the jury=s
determination, even if probative evidence exists that supports the verdict, see
Clewis, 922 S.W.2d at 133, our evaluation should not substantially
intrude upon the jury=s
role as the sole judge of the weight and credibility of witness testimony.  Santellan,
939 S.W.2d at 164.  Where there is conflicting evidence, the jury=s verdict on such matters
is generally regarded as conclusive.  Van Zandt v. State, 932
S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref=d). 
A jury is in the best position to evaluate the credibility of witnesses, and we
are required to afford Adue
deference@ to the jury=s determination.  Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Manslaughter
is defined as recklessly causing the death of a person.  Tex. Penal Code Ann. ' 19.04 (Vernon 2003). 
A person acts recklessly or is reckless Awith
respect to circumstances surrounding his conduct or the result of his conduct
when he is aware of but consciously disregards a substantial and unjustifiable
risk that the circumstances exist or the result will occur.@  Tex. Penal Code Ann. '
6.03(c) (Vernon 2003).  The risk Amust
be of such a nature and degree that its disregard constitutes a gross deviation
from the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor=s
standpoint.@  Id.

Application

The
evidence shows that Appellant pointed a rifle at Cox and that the rifle
discharged, killing Cox.  Appellant=s
testimony establishes this sequence of events, although he testified that his
pointing of the gun at Cox was inadvertent. 

Appellant
testified that he was familiar with guns, he knew the risks involved in
handling them, he knew Cox was present, and he caused the rifle to point at
Cox.  This is sufficient evidence for the jury to conclude that Appellant was
aware of but consciously disregarded a substantial and unjustifiable risk that Cox
would be shot when he pointed the gun at him.  See Gahagan v. State,
242 S.W.3d 80, 87-88 (Tex. App.–Houston [1st Dist.] 2007, pet. ref=d) (affirming manslaughter
conviction for defendant who testified that he picked up a gun he kept in the
beer holder and began Aplaying
with@ the gun and
spinning it on his index finger, and the gun accidentally discharged); Davis
v. State, 757 S.W.2d 386, 388 (Tex. App.–Dallas 1988, no pet.)
(affirming manslaughter conviction for defendant who alleged he was just
playing with gun, did not know it was loaded, and that it accidentally
discharged).  Accordingly, the evidence is legally sufficient for a rational
jury to conclude that Appellant committed manslaughter.  We overrule Appellant=s first issue.

We
reach the same conclusion with respect to the factual sufficiency of the
evidence.  Appellant argues at length that Wilson=s
testimony is not reliable.  Specifically, he argues that her credibility was
undermined by her theft convictions and inconsistencies between her version of
events and the physical evidence.  

It
is primarily the jury=s
role to assess the credibility of witnesses, see Marshall,
210 S.W.3d at 625, and the jury made an assessment in this case.  Wilson
testified that Appellant pointed the gun at Cox and fired it.  This testimony,
if believed, supported a conviction for murder.  However, the jury discounted
her testimony and, instead, convicted Appellant on the basis of his own
testimony that he caused the rifle to point at Cox and it discharged
accidentally. 

Appellant=s evidence, if the jury
credited it, could have established that Appellant did not know that the rifle
was defective or did not understand the nature of the defect.  However, even if
we assume the jury believed that the rifle was defective, and that Appellant
did not know it, the jury could nevertheless have concluded that pointing an
ordinary rifle at a living person was a conscious disregard of a substantial
and unjustifiable risk.  Under Appellant=s
version of events, it was even more of a risk to point this particular gun at a
person than Appellant might have anticipated.  Nevertheless, the jury=s verdict that Appellant=s actions were reckless is
not irrational, and Appellant=s
conviction is not clearly wrong or unjust.  We overrule Appellant=s second issue.

 

Introduction of Extraneous Offenses

In
his third issue, Appellant argues that the trial court erred in admitting
evidence about an incident in 2004 when Appellant pointed a gun at a motorist
and pulled the trigger.[1] 

Applicable
Law

Evidence
of other crimes, wrongs, or acts is admissible under certain conditions.  Tex. R. Evid. 404(b).  Although not
admissible to prove that a person acted in conformity with his character,
extraneous offenses may be admissible for other purposes, such as to show
motive, opportunity, and absence of mistake or accident.  Id.; Montgomery
v. State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh=g).  The burden is on the
proponent of the evidence to satisfy the trial court that the Aother crime, wrong, or act@ has relevance apart from
its tendency to prove the character of a person in order to show that he acted
in conformity therewith.  Montgomery, 810 S.W.2d at 387.  For
purposes of rule 404(b), the question is whether the extraneous offense is
relevant.  See Santellan v. State, 939 S.W.2d 155, 168‑69
(Tex. Crim. App. 1997).

Evidence
that is admissible under rule 404 may still be excluded, upon proper objection,
if the trial court determines that the probative value of the evidence is
substantially outweighed by the danger of unfair prejudice, confusion of
issues, misleading the jury, or considerations of undue delay or needless presentation
of cumulative evidence.  See Tex.
R. Evid. 403; Rodriguez v. State, 203 S.W.3d
837, 843 (Tex. Crim. App 2006).  Evidence is relevant if it has the tendency to
make the existence of any fact that is of consequence to the determination of
the case more probable or less probable than it would have been without the
evidence.  See Tex. R. Evid.
401.  

When
a defendant, as here, objects to evidence on the basis of rules of evidence 403
and 404, the factors a trial court must consider in determining the
admissibility of extraneous evidence include the following:

 

1)            Whether the danger of undue prejudice
outweighs the probative value of the evidence in view of the availability of
other means of proof and other factors appropriate for making decision of this
kind under Rule 403;

2)            How compellingly evidence of the
extraneous misconduct serves to make more or less probable a fact of
consequence;

3)            The strength of the proponent=s evidence to show the opponent in fact committed the
extraneous conduct;

4)            The potential of the extraneous offense
to Aimpress the jury in an irrational but nevertheless
indelible way@

5)            The amount of time necessary to develop
the evidence of the extraneous offense evidence; and

6)            How great the proponent=s Aneed@ is for evidence of the extraneous transaction.

 

 

Mozon v.
State, 991 S.W.2d 841, 846 (Tex. Crim. App. 1991); Montgomery v.
State, 810 S.W.2d at 389-90.

The
proponent=s need for
the extraneous evidence is evaluated in terms of whether the proponent has
other available evidence to establish the act of consequence, the strength of
the evidence, and whether the evidence relates to an issue that is in dispute. 
Montgomery, 810 S.W.2d at 390. 

When
a defendant claims self-defense or accident, the state may introduce rebuttal
evidence of prior violent acts by the accused if it helps to understand the
defendant=s intent.  See
Halliburton v. State, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975)
(state permitted to present evidence that defendant shot another man weeks
after the charged shooting to rebut her testimony that she did not intend to
kill the victim); Stembridge v. State, No. 08‑07‑00181‑CR,
2008 Tex. App. LEXIS 8179, at *4 (Tex. App.–El Paso Oct. 30, 2008, no pet.)
(mem. op., not designated for publication) (defendant=s testimony of self as victim permitted
rebuttal evidence of prior violent acts of defendant to show his intent)
(citing Bradley v. State, 960 S.W.2d 791, 803 (Tex. App.–El Paso
1997, pet. ref=d));
Jones v. State, 241 S.W.3d 666, 669 (Tex. App.–Texarkana 2007, no
pet.).

A
trial court=s ruling
on the admission of extraneous evidence under rule 404(b) is reviewed for an
abuse of discretion.  See Ransom v. State, 920 S.W.2d 288,
299 (Tex. Crim. App. 1996) (citing Montgomery, 810 S.W.2d at
392); see also Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim.
App. 2003). 

Application

The
issue before the jury was whether Appellant=s
admitted shooting of Cox was intentional, reckless, or an excusable accident–in
other words, Appellant=s
intent.  In an effort to establish that intent and to rebut Appellant=s testimony that the
shooting was an accident, the State sought to admit testimony regarding an
incident for which Appellant had pleaded no contest to the offense of deadly
conduct.  

The
trial court found that the testimony of the victim of the deadly conduct was
relevant to rebut Appellant=s
defense of accident and mistake in the shooting of Cox.  The court also found
that the probative value of the testimony did not outweigh the prejudicial
effect of the evidence.  Immediately prior to the victim=s testimony, the trial court instructed the
jury that the evidence was being admitted for the limited purpose of whether it
rebutted the defensive theory of accident.  The victim then testified about an
altercation he had with Appellant that ended when Appellant aimed a gun at him
and pulled the trigger, causing the gun to make a clicking sound, but not fire.

Analyzing
the testimony by applying the appropriate factors, we first consider how
compellingly the extraneous offense serves to make a fact of consequence more
or less probable.  See Tex. R.
Evid. 404(b); Mozon, 991 S.W.2d at 846-47. 
The fact of consequence was Appellant=s
intent when he shot Cox.  Appellant testified that the shooting was an
accident.  The State charged Appellant with murder, an intentional offense, and
presented evidence to show that the shooting was intentional.  Specifically,
Jimmie Marie Wilson testified that Appellant got his rifle out of Cox=s truck, pointed it at Cox,
and shot him.  She did not specifically say that the shooting was intentional,
but there was circumstantial evidence that would allow the finder of fact to conclude
that Appellant intended to shoot Cox.  Wilson testified that she went to Cox
after Appellant shot him.  He died while she was trying to get his cellular
telephone out of his pocket.  She testified that she asked Appellant not to
kill her, that he said he would not, and that he took Cox=s telephone from her,
saying that there was telephone reception at that location.  

Wilson
also testified that Appellant told her that the gun had gone off.  When she
told him she had seen what he did, he told her that Ait was going to be all right [and] not to say
anything.@  She
testified that Appellant said he had Aput
[Cox] out of his misery; he wouldn=t
be suffering anymore.@ 


We
agree with Appellant that there are differences between his shooting of Cox and
his attempted shooting of the victim with whom he had an altercation.  The
incidents involved different firearms, different provocations, and different
participants.  But unlike when evidence is offered under rule 404(b) to prove
identity or a signature crime, the degree of similarity required to rebut a
defensive issue is not great, and the extraneous offense need not be identical
to the charged offense. See Blackwell v. State, 193 S.W.3d 1, 13
(Tex. App.–Houston [1st Dist.] 2006, pet. ref=d);
see also Dennis v. State, 178 S.W.3d 172, 178-79 (Tex. App.–Houston
[1st Dist.] 2005, pet. ref=d). 
What is similar here is that in both instances, according to the State=s proof, Appellant acted
intentionally to shoot another person.  Whether the fact that Appellant had tried
to shoot another person makes it more likely that Appellant acted intentionally
when he shot Cox is a question on which reasonable minds may differ.  In light
of Appellant=s
accident defense, the trial court=s
decision to allow the extraneous offense evidence to rebut his defensive theory
is subject to reasonable disagreement.  See Bass v. State, 270
S.W.3d 557, 563 (Tex. Crim. App. 2008).   Accordingly, we hold that the trial
court did not abuse its discretion in allowing the evidence pursuant to rule
404(b).

It
is not enough, however, that the evidence is relevant.  Pursuant to rule 403,
the probative value of the evidence must not be substantially outweighed by the
danger of unfair prejudice, confusion of the issues, misleading the jury, or by
considerations of delay or needless presentation of cumulative evidence. 
Evidence that Appellant had previously tried to shoot another person is the
kind of evidence that has the potential to impress a jury Ain some irrational but
nevertheless indelible way.@
 See Montgomery, 810 S.W.2d at 390.  The jury could conclude from
that fact that Appellant is a violent person, which is the inference forbidden
for this kind of evidence. 

A
significant amount of time was not required to develop this evidence.  The
reporter=s record for
the entire trial on the merits, excluding the voir dire and the punishment
hearing, is seven hundred and sixty-four pages long.  Of those pages, twenty-three
pages were devoted to this witness, including the five pages where the victim=s own prior conviction was
discussed.  

Finally,
the State had need for this evidence to establish a fact of consequence, which
is Appellant=s
intent.  Appellant testified that the shooting was accidental.  Wilson=s testimony provided
evidence that allowed the conclusion that Appellant intentionally shot Cox. 
Wilson was not the most reliable historian of events, and the State did not
have other evidence of Appellant=s
intent apart from his actions following the shooting.  Accordingly, the State
had need of this evidence. 

In
conclusion, there is evidence to support the trial court=s ruling.  Reasonable minds could differ as to
the admission of this evidence both because of a tenuous connection between the
two incidents and because of the chance that the jury would look unfavorably on
a person who had previously tried to shoot another individual.  These kinds of
rulings are subject to harmless error analysis.  See Johnston v. State,
145 S.W.3d 215, 225 (Tex. Crim. App. 2004) (harmless error analysis appropriate
for errors in rule 404(b) rulings). We can be confident that the jury did not
misuse this evidence and that it did not distort their verdict because the jury
found insufficient evidence that Appellant acted intentionally when he killed
Cox.  This was a rejection of Wilson=s
testimony.  The jury accepted Appellant=s
testimony that the shooting was accidental and, in so doing, did not make the
forbidden inference that he intended to kill Cox because he had previously
tried to shoot another man.[2]  We overrule
Appellant=s third
issue. 

 

Failure to Disclose Gun in Violation of Brady
v. Maryland

In
Appellant=s fourth
issue, he argues that the State failed to disclose exculpatory evidence,
specifically the rifle that he used to shoot Cox.  

Facts

Before
trial, Appellant filed a Brady motion requesting exculpatory
information.  See Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194,
1196-97, 10 L. Ed. 2d 215 (1963).  Appellant testified that he threw the rifle
into the same pond where he disposed of Cox=s
body.  During the trial, the police testified that they searched the pond but
did not find the gun there and that they had never recovered it.  Following the
trial, the State filed a motion for judgment nunc pro tunc.  In the motion, the
State alleged that the written judgment did not accurately reflect the rendered
judgment because it did not include findings regarding a deadly weapon or
support the forfeiture of the weapon.  The trial court granted the motion and
issued a new written judgment, which included a deadly weapon finding made by
the jury and a finding that the sheriff=s
office had recovered a specific rifle in their investigation of the case.

For
the first time on appeal, Appellant argues that his right to Brady
material was violated because the State failed to provide the gun for testing
prior to trial.  The State responded by asking this court to abate the appeal
for an evidentiary hearing.  We overruled the State=s motion.  The trial court held a hearing on
the matter, and the State presented evidence that it did not have the gun and
that the judgment erroneously stated that the sheriff=s office had recovered the rifle.  Thereafter,
the trial court issued another written judgment, which included the deadly
weapon finding but did not include any findings about the sheriff=s office recovering the
rifle.

Appellant
points out that the trial court had jurisdiction to issue the original judgment
nunc pro tunc, because notice of appeal had not yet been filed, but did not
have jurisdiction to enter the second judgment nunc pro tunc because the appeal
was pending at that time.  See
Tex. R. App. P. 25.2(g).  We agree, but we also agree with the State
that the forfeiture of the weapon findings were not properly the subject of a
nunc pro tunc order.  Instead, Texas law contemplates that the state or the
relevant police agency will file a separate motion for forfeiture of a weapon
in the appropriate case.  See Tex.
Code Crim. Proc. Ann. arts. 18.18, 18.19 (Vernon Supp. 2005).

Such
a motion would address another problem presented here.  Specifically, there is
no evidence to support the trial court=s
finding that the weapon was recovered by the police.  Instead, the State filed
a motion for judgment nunc pro tunc stating that the judgment entered did not
accurately reflect the judgment and sentence.  The motion did not include a
stipulation that the State had the rifle.  And there is no other evidence to
support the trial court=s
finding that the sheriff=s
office seized a weapon.[3]  Accordingly,
Appellant has not shown that the State possessed and failed to provide access
to the rifle.  We overrule Appellant=s
fourth issue.  

 

Failure to Preserve Evidence

In
his fifth issue, Appellant argues that his due process rights were violated
because the State did not preserve the truck from which he shot Cox and that
the photographs taken of the truck were inadequate. 

Applicable
Law

Three
United States Supreme Court cases establish the parameters of the state=s duty to preserve evidence
for trial.  In California v. Trombetta, the Court began with the
observation that A[t]he
Due Process Clause of the Fourteenth Amendment requires the State to disclose
to criminal defendants favorable evidence that is material either to guilt or
to punishment.@  California
v. Trombetta, 467 U.S. 479, 480, 104 S. Ct. 2528, 2529, 81 L. Ed. 2d
413 (1984).  At issue in Trombetta was whether the State was
required to preserve potentially exculpatory evidence on behalf of a
defendant.  Id. 467 U.S. at 488, 104 S. Ct. at 2534.  The Court
noted that A[w]henever
potentially exculpatory evidence is permanently lost, courts face the
treacherous task of divining the import of materials whose contents are unknown
and, very often, disputed.@ 
Id. at 104 U.S. at 486, 104 S. Ct. at 2533.  The Court in Trombetta
concluded that 

 

[w]hatever duty the Constitution imposes on the States
to preserve evidence, that duty must be limited to evidence that might be
expected to play a significant role in the suspect=s defense.  To meet this standard of constitutional
materiality [citation omitted], evidence must both possess an exculpatory value
that was apparent before the evidence was destroyed, and be of such a nature
that the defendant would be unable to obtain comparable evidence by other
reasonably available means.

 

 

104 U.S. at 489-90,
104 S. Ct. at 2534. 

The
United States Supreme Court subsequently held, in Arizona v. Youngblood,
that, unless the accused can show bad faith on the part of law enforcement in
failing to preserve potentially useful evidence, the accused was not denied his
rights under the Fourteenth Amendment=s
Due Process Clause.  See Arizona v. Youngblood, 488 U.S.
51, 58, 109 S. Ct. 333, 337, 102 L. Ed.2d 281 (1988).  In Youngblood,
clothing obtained during a sexual assault investigation was not refrigerated. 
Two small semen stains were found on the clothing over a year later.  Because
the clothing had not been refrigerated, the sample had degraded and a test on
the stains was inconclusive as to the contributor=s
identity.  The Court held that the State had not violated the defendant=s due process rights
because there was not a sufficient likelihood that the evidence was exculpatory
and because there could not be a violation unless Athe exculpatory value of the evidence [was]
apparent >before
the evidence [was] destroyed.=@  Youngblood,
488 U.S. at 56, 109 S. Ct. at 336.  Accordingly, a defendant must show that the
loss or destruction of evidence was done with Apolice=s knowledge of the
exculpatory value of the evidence at the time it was lost or destroyed.@  Id., 488
U.S. at 56, 109 S. Ct. at 337.

            Similarly,
in Illinois v. Fisher, the Due Process Clause was not violated
when, consistent with police procedure, the police destroyed the white powder
they found in the defendant=s
possession.  See Illinois v. Fisher, 540 U.S. 544, 545, 124 S.
Ct. 1200, 1200, 157 L. Ed. 2d 1060 (2004) (per curiam).  In that case, the
police had tested the white powder to confirm that it was cocaine.  While on
release, Fisher fled the jurisdiction and was a fugitive for ten years.  The
cocaine was destroyed on a routine basis during the years Fisher was a
fugitive.  The Supreme Court concluded that Athe
applicability of the badBfaith
requirement in Youngblood depended not on the centrality of the
contested evidence to the prosecution=s
case or the defendant=s
defense, but on the distinction between >material
exculpatory= evidence
and >potentially
useful= evidence.@  Id., 540
U.S. at 549, 124 S. Ct. at 1203.  Because Fisher=s
claim for the need for a retest of the cocaine related to A>potentially useful= evidence,@
the Court noted that A[a]t
most, respondent could hope that, had the evidence been preserved, a fifth test
conducted on the substance could have exonerated him.@  Id. 540 U.S. at 548, 124 S.
Ct. at 1202.  That potential benefit was not sufficient to impose a duty upon
the police to require the police to retain the cocaine for the decade while
Fisher was a fugitive.  

 

Application

According
to Appellant, he shot Cox, according to Appellant, while standing on the
running board of Cox=s
truck.  Appellant argues that his defense depended, in part, on being able to
show the jury the mechanics of how he was removing the rifle from the truck,
and that this was hampered by not having the truck available for trial.  He
also argues that by having the truck available, he would have been able to show
that Wilson was not in a position to see the events about which she testified. 
The investigating officers took three photographs of the truck, which were
admitted at trial.  However, the photographs depict only the passenger side and
the front of the truck.  The police did not retain the truck.  Appellant
contends photographs of the driver=s
side of the vehicle would allow him to better demonstrate how the shooting
occurred.  Appellant offered photographs of a somewhat similar vehicle, but the
State objected, due to the vehicle=s
dissimilarity.  The court sustained the objection.

Appellant
does not directly accuse the State of acting in bad faith by not preserving the
truck or taking more photographs of it.  However, Appellant suggests that Abad faith can be imputed in
a case where the State disposes of evidence which is vital to both the State and
the defense.@  

We
cannot conclude that Appellant has shown bad faith or that it can be imputed
under these circumstances.  The police took photographs of the truck, and there
is no evidence that they were seeking to keep any evidence from Appellant. 
Furthermore, the truck was hardly unique, and there would be no reason to
conclude that releasing the truck would prevent Appellant from having evidence
he needed.  More importantly, the police had no basis to anticipate that such
evidence would be material or exculpatory evidence because they did not know
that Appellant would argue that the shooting was accidental until the trial.  

Alternately,
Appellant argues that we should follow the court=s
decision in Pena v. State, in which the court held that the Texas
Constitution=s due
course of law provision provides broader protection than does the Due Process
Clause of the U.S. Constitution.  See Pena v. State, 226
S.W.3d 634 (Tex. App.–Waco 2007).  In Pena, the Tenth Court of
Appeals held that the due course of law provision does not require a showing of
bad faith to bring this kind of claim.  Id. at 651-53.  However,
after Appellant filed his brief, the Texas Court of Criminal Appeals reversed
the intermediate court decision on the grounds that the defendant had waived
the argument that the Texas Constitution provided broader protections because
he had not made that argument in the trial court.  See Pena v. State,
No. PD‑1411‑07, 2009 Tex. Crim. App. LEXIS 511, at *9-10 (Tex.
Crim. App. 2009).  Appellant has not directed us to, nor have we found, where
he advanced this argument in the trial court.  Therefore, he has not preserved
a claim based on the Texas Constitution.  Id.

Appellant
has not shown that the State acted in bad faith or with the intent to deprive
Appellant of exculpatory evidence when it released the truck.  Accordingly,
Appellant=s due process
rights were not violated, and we overrule Appellant=s fifth issue.

 

Lesser Included Offense

In
Appellant=s sixth
issue, Appellant argues that the trial court erred when it did not, on its own
motion, instruct the jury on the lesser included offense of criminally
negligent homicide.  Appellant was indicted for the offense of murder.  The
trial court instructed the jury to consider whether he was guilty of murder or
the lesser offense of manslaughter.  Appellant did not object to the charge and
did not request that the jury be instructed on the lesser included offense of
criminally negligent homicide.

Appellant
concedes that this court has previously held that the failure to submit an
unrequested lesser included offense instruction is not error nor is it subject
to the Almanza[4] egregious
harm analysis.  See Middleton v. State, No. 12-07-00066-CR, 2008
Tex. App. LEXIS 2137, at *9-10 (Tex. App.–Tyler Mar. 26, 2008, pet. ref=d) (mem. op., not
designated for publication) (citing Delgado v. State, 235 S.W.3d
244, 250 (Tex. Crim. App. 2007)).  Appellant suggests that this court relied on
dicta in the Delgado decision and respectfully requests that we
reconsider our holding.  

The
Delgado decision addressed whether the trial court was
required, in the absence of a request, to give an instruction defining the
state=s burden of
proof for extraneous offenses offered in the guilt phase of trial.  Id.
at 253.  Analogizing that issue with the issue of whether it was error for the
trial court not to give an unrequested instruction for a lesser included
offense, the court concluded that such matters were strategic decisions to be
made by a defendant and so did not represent an error that could be complained
of on appeal.  Id. at 250, 254.  The court quoted Professor
George Dix at length, and with approval, on this precise issue, including the
following passage from Professor Dix:

 

Because of the strategic nature of the decision, it is
appropriate for the trial court to defer to the implied strategic decisions of
the parties by refraining from submitting lesser offense instructions without a
party=s request. It is clear that the defense may not claim
error successfully on appeal due to the omission of a lesser included offense
if the defense refrained from requesting one.

 

 

Id.
at 250 (quoting 43 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure ' 36.50 (Supp. 2006)).

Strictly
speaking, Appellant is correct that this language was not directly necessary to
the court=s ultimate
holding in Delgado.  However, we conclude that the court=s statements in Delgado
are an accurate assessment of the law.  See Oursbourn v. State,
259 S.W.3d 159, 179 (Tex. Crim. App. 2008) (AAs
we recently stated in Delgado: >The
trial judge has an absolute sua sponte duty to prepare a jury charge that
accurately sets out the law applicable to the specific offense charged. But it
does not inevitably follow that he has a similar sua sponte duty to instruct
the jury on all potential defensive issues, lesser‑included offenses, or
evidentiary issues. These are issues that frequently depend upon trial strategy
and tactics.=@); see also Thomas v.
State, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985) (court could not
consider complaint about lesser included instruction that was not sought by the
defendant).

Appellant=s position, which would
essentially require a trial court to instruct the jury on every plausible
lesser included offense, would allow convictions for offenses the defendant had
never been charged with and instructions for which neither party asked.  As the
court noted in Posey v. State, 966 S.W.2d 57, 63 (Tex. Crim. App.
1998), that convicted person could then argue on appeal that it was error to
instruct the jury on a charge that neither he nor the state sought.  

The
legislature has provided a mechanism to deal with this issue.  The trial court
is obligated to give a charge to the jury.  Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).  The defendant is
provided an opportunity to examine the charge and present objections.  Id. 
In some cases, it is clear that a defendant is not seeking an instruction on
lesser included offenses.  See Walton v. State, No. 14‑06‑00227‑CR,
2007 Tex. App. LEXIS 1847, at *6-7 (Tex. App.–Houston [14th Dist.] Mar. 8,
2007, pet. ref=d)
(mem. op., not designated for publication).  In other cases it may be less
clear, but article 36.14 imposes an obligation on a defendant to raise any
objections he has to the proposed charge at a time when those objections can be
addressed, that is before the jury is instructed.

The
decision to request a lesser included offense instruction is a strategic one
that belongs to the litigants.  Accordingly, the failure to give an unrequested
instruction for a lesser included offense is not error.  We overrule Appellant=s sixth issue.

 

Disposition

Having
overruled Appellant=s
six issues, we affirm the judgment of the trial court.

 

 

    SAM
GRIFFITH   

   Justice

 

 

Opinion delivered April 16, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)









[1] The motorist testified, over Appellant=s objection, that he and some friends had Aflirted@
with a woman who was with Appellant, and that Appellant had chased and
confronted him.  He testified that Appellant drew a pistol, aimed it at him,
and pulled the trigger, but the gun failed to fire. Appellant pleaded no
contest to that offense.

 





[2] The testimony that the rifle was unreliable and
subject to inadvertent firing did not come from Appellant.  Accordingly, any
residual bias the jury might have against him because of this evidence would
not necessarily intrude on the jury=s
evaluation of the evidence about the condition of the rifle.





[3]
We are aware that, in some jurisdictions, the
district attorney=s office prepares the judgments for the trial court=s review and approval.  There is no evidence that this
occurred here, and Appellant has not shown any evidence that supports the trial
court=s finding that the State had the weapon.





[4] Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on
reh=g).