# NO. 12-07-00433-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES LLOYD KING, JR.,*<br>*APPELLANT* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our opinion issued on August 19, 2009 and substitute the following opinion. James Lloyd King, Jr. appeals his conviction for manslaughter. In six issues, Appellant argues that the evidence is insufficient to support the conviction, that the trial court erred in allowing certain evidence and in its instructions to the jury, and that the State failed to meet its obligations regarding the collection of evidence. We affirm.

## BACKGROUND

Appellant was getting his rifle out of Delbert Ray Cox's truck when the rifle discharged, killing Cox. Appellant and Cox were friends. Following the shooting, Appellant tied Cox to the bumper of his truck and dragged him to a pond where he sometimes disposed of trash. Jimmie Marie Wilson was with the men when Appellant shot Cox. She drove to another location and called the police. Wilson told the police that Appellant had deliberately aimed his rifle at Cox and shot him. The police responded and ultimately found Cox's body in the pond. Appellant was not at the scene, and the police did not recover the rifle.

A Van Zandt County grand jury indicted Appellant for the murder of Cox. He pleaded

not guilty and a trial was held.

Wilson testified at trial that she was talking with Appellant's companion while Appellant was removing his personal items from the truck. Wilson said she saw Appellant reach into the vehicle, get the rifle, put it on his hip, point it at Cox, and shoot him in the back. Appellant adduced testimony through the investigating officers that Wilson had many aliases, and numerous criminal convictions. The police officers who investigated the shooting all knew Wilson through their law enforcement work.

The medical examiner who performed the autopsy on Cox put crucial portions of Wilson's testimony in doubt. The examiner testified that Cox was shot in the chest, not in the back as Wilson had said. The medical examiner also testified that the bullet traveled in a slightly downward manner. She stated that the bullet entered Cox's right shoulder; passed through his collar bone, the upper lobe of his right lung, and his aorta; and exited his back, shattering the right third through fifth ribs.

Appellant's father testified that he had given the rifle to Appellant. He testified that the rifle had been damaged by being driven over, that it had spontaneously misfired on one occasion, and that he told Appellant about the problem with the rifle. Appellant testified that his father had told him the rifle had been run over and the safety was very difficult to set. He thought his father meant that the gun had a "hair trigger on it." Appellant did not understand that his father meant the gun would discharge on its own.

Appellant testified that he was taking the rifle out of the truck because he had been driving Cox's truck and was trading back with him for his own vehicle. He testified that the rifle discharged as he was removing it from the truck, causing the fatal injury to Cox. He stated that he did not intentionally shoot Cox. Appellant acknowledged that aiming a loaded gun at someone was dangerous. Appellant also contended that Wilson could not have seen any of the events because she was talking to a woman on the far side of the truck when the shooting occurred and because her line of sight was blocked by the truck. Appellant admitted that he tied a rope to Cox's ankle, dragged his body to a pond, threw the body in, and covered it with a piece of metal. He testified that he threw the rifle into the same pond.

To rebut Appellant's accident defense, the State offered evidence that Appellant had been previously convicted of the offense of deadly conduct. Appellant objected to this evidence. Following a hearing, the trial court allowed the victim in the deadly conduct case to testify.

The trial court instructed the jury on the offenses of murder and manslaughter. The jury convicted Appellant of manslaughter and assessed punishment at imprisonment for fifteen years. This appeal followed.

## LEGAL AND FACTUAL SUFFICIENCY

In his first and second issues, Appellant argues that the evidence is legally and factually insufficient to support a manslaughter conviction.

### Standards of Review

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.-Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, we conclude that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

While legal sufficiency is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires review of the factual sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996). In conducting a factual sufficiency review of the evidence, we must first assume that the evidence is legally sufficient. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We review the factual sufficiency of the evidence to determine whether, considering all the evidence in a neutral light, the evidence supporting the conviction is too weak to withstand scrutiny or the great weight and preponderance of the evidence contradicts the jury's verdict to the extent that the verdict is clearly wrong and manifestly unjust. *See Watson v. State*, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. 2006). A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002). A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

The fact that we might harbor a subjective level of reasonable doubt is not enough to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417. Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis*, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). A jury is in the best position to evaluate the credibility of witnesses, and we are required to afford "due deference" to the jury's determination. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Manslaughter is defined as recklessly causing the death of a person. TEX. PENAL CODE ANN. § 19.04 (Vernon 2003). A person acts recklessly or is reckless "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(c) (Vernon 2003). The risk "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

**Application**

The evidence shows that Appellant pointed a rifle at Cox and that the rifle discharged, killing Cox. Appellant's testimony establishes this sequence of events, although he testified that his pointing of the gun at Cox was inadvertent.

Appellant testified that he was familiar with guns, he knew the risks involved in handling them, he knew Cox was present, and he caused the rifle to point at Cox. This is sufficient evidence for the jury to conclude that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that Cox would be shot when he pointed the gun at him. *See Gahagan v. State*, 242 S.W.3d 80, 87-88 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd) (affirming manslaughter conviction for defendant who testified that he picked up a gun he kept in the beer holder and began "playing with" the gun and spinning it on his index finger, and the gun accidentally discharged); *Davis v. State*, 757 S.W.2d 386, 388 (Tex. App.–Dallas 1988, no pet.) (affirming manslaughter conviction for defendant who alleged he was just playing with gun,

4

did not know it was loaded, and that it accidentally discharged). Accordingly, the evidence is legally sufficient for a rational jury to conclude that Appellant committed manslaughter. We overrule Appellant's first issue.

We reach the same conclusion with respect to the factual sufficiency of the evidence. Appellant argues at length that Wilson's testimony is not reliable. Specifically, he argues that her credibility was undermined by her theft convictions and inconsistencies between her version of events and the physical evidence.

It is primarily the jury's role to assess the credibility of witnesses, *see Marshall*, 210 S.W.3d at 625, and the jury made an assessment in this case. Wilson testified that Appellant pointed the gun at Cox and fired it. This testimony, if believed, supported a conviction for murder. However, the jury discounted her testimony and, instead, convicted Appellant on the basis of his own testimony that he caused the rifle to point at Cox and it discharged accidentally.

Appellant's evidence, if the jury credited it, could have established that Appellant did not know that the rifle was defective or did not understand the nature of the defect. However, even if we assume the jury believed that the rifle was defective, and that Appellant did not know it, the jury could nevertheless have concluded that pointing an ordinary rifle at a living person was a conscious disregard of a substantial and unjustifiable risk. Under Appellant's version of events, it was even more of a risk to point this particular gun at a person than Appellant might have anticipated. Nevertheless, the jury's verdict that Appellant's actions were reckless is not irrational, and Appellant's conviction is not clearly wrong or unjust. We overrule Appellant's second issue.

## INTRODUCTION OF EXTRANEOUS OFFENSES

In his third issue, Appellant argues that the trial court erred in admitting evidence about an incident in 2004 when Appellant pointed a gun at a motorist and pulled the trigger.[1]

## Applicable Law

Evidence of other crimes, wrongs, or acts is admissible under certain conditions. TEX. R. EVID. 404(b). Although not admissible to prove that a person acted in conformity with his

---

[1] The motorist testified, over Appellant's objection, that he and some friends had "flirted" with a woman who was with Appellant, and that Appellant had chased and confronted him. He testified that Appellant drew a pistol, aimed it at him, and pulled the trigger, but the gun failed to fire. Appellant pleaded no contest to that offense.

character, extraneous offenses may be admissible for other purposes, such as to show motive, opportunity, and absence of mistake or accident. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g). The burden is on the proponent of the evidence to satisfy the trial court that the "other crime, wrong, or act" has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. *Montgomery*, 810 S.W.2d at 387. For purposes of rule 404(b), the question is whether the extraneous offense is relevant. *See Santellan v. State*, 939 S.W.2d 155, 168-69 (Tex. Crim. App. 1997).

Evidence that is admissible under rule 404 may still be excluded, upon proper objection, if the trial court determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or considerations of undue delay or needless presentation of cumulative evidence. *See* TEX. R. EVID. 403; *Rodriguez v. State*, 203 S.W.3d 837, 843 (Tex. Crim. App 2006). Evidence is relevant if it has the tendency to make the existence of any fact that is of consequence to the determination of the case more probable or less probable than it would have been without the evidence. *See* TEX. R. EVID. 401.

When a defendant, as here, objects to evidence on the basis of rules of evidence 403 and 404, the factors a trial court must consider in determining the admissibility of extraneous evidence include the following:

1)  Whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decision of this kind under Rule 403;
2)  How compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence;
3)  The strength of the proponent's evidence to show the opponent in fact committed the extraneous conduct;
4)  The potential of the extraneous offense to "impress the jury in an irrational but nevertheless indelible way"
5)  The amount of time necessary to develop the evidence of the extraneous offense evidence; and
6)  How great the proponent's "need" is for evidence of the extraneous transaction.

*Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1991); *Montgomery v. State*, 810 S.W.2d at 389-90.

The proponent's need for the extraneous evidence is evaluated in terms of whether the proponent has other available evidence to establish the act of consequence, the strength of the

evidence, and whether the evidence relates to an issue that is in dispute. *Montgomery*, 810 S.W.2d at 390.

When a defendant claims self-defense or accident, the state may introduce rebuttal evidence of prior violent acts by the accused if it helps to understand the defendant's intent. *See Halliburton v. State*, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975) (state permitted to present evidence that defendant shot another man weeks after the charged shooting to rebut her testimony that she did not intend to kill the victim); *Stembridge v. State*, No. 08-07-00181-CR, 2008 Tex. App. LEXIS 8179, at *4 (Tex. App.–El Paso Oct. 30, 2008, no pet.) (mem. op., not designated for publication) (defendant's testimony of self as victim permitted rebuttal evidence of prior violent acts of defendant to show his intent) (citing *Bradley v. State*, 960 S.W.2d 791, 803 (Tex. App.–El Paso 1997, pet. ref'd)); *Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.– Texarkana 2007, no pet.).

A trial court's ruling on the admission of extraneous evidence under rule 404(b) is reviewed for an abuse of discretion. *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996) (citing *Montgomery*, 810 S.W.2d at 392); *see also Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

## Application

The issue before the jury was whether Appellant's admitted shooting of Cox was intentional, reckless, or an excusable accident–in other words, Appellant's intent. In an effort to establish that intent and to rebut Appellant's testimony that the shooting was an accident, the State sought to admit testimony regarding an incident for which Appellant had pleaded no contest to the offense of deadly conduct.

The trial court found that the testimony of the victim of the deadly conduct was relevant to rebut Appellant's defense of accident and mistake in the shooting of Cox. The court also found that the probative value of the testimony did not outweigh the prejudicial effect of the evidence. Immediately prior to the victim's testimony, the trial court instructed the jury that the evidence was being admitted for the limited purpose of whether it rebutted the defensive theory of accident. The victim then testified about an altercation he had with Appellant that ended when Appellant aimed a gun at him and pulled the trigger, causing the gun to make a clicking sound, but not fire.

Analyzing the testimony by applying the appropriate factors, we first consider how

7

compellingly the extraneous offense serves to make a fact of consequence more or less probable. *See* TEX. R. EVID. 404(b); ***Mozon***, 991 S.W.2d at 846-47. The fact of consequence was Appellant's intent when he shot Cox. Appellant testified that the shooting was an accident. The State charged Appellant with murder, an intentional offense, and presented evidence to show that the shooting was intentional. Specifically, Jimmie Marie Wilson testified that Appellant got his rifle out of Cox's truck, pointed it at Cox, and shot him. She did not specifically say that the shooting was intentional, but there was circumstantial evidence that would allow the finder of fact to conclude that Appellant intended to shoot Cox. Wilson testified that she went to Cox after Appellant shot him. He died while she was trying to get his cellular telephone out of his pocket. She testified that she asked Appellant not to kill her, that he said he would not, and that he took Cox's telephone from her, saying that there was telephone reception at that location.

Wilson also testified that Appellant told her that the gun had gone off. When she told him she had seen what he did, he told her that "it was going to be all right [and] not to say anything." She testified that Appellant said he had "put [Cox] out of his misery; he wouldn't be suffering anymore."

We agree with Appellant that there are differences between his shooting of Cox and his attempted shooting of the victim with whom he had an altercation. The incidents involved different firearms, different provocations, and different participants. But unlike when evidence is offered under rule 404(b) to prove identity or a signature crime, the degree of similarity required to rebut a defensive issue is not great, and the extraneous offense need not be identical to the charged offense. *See **Blackwell v. State***, 193 S.W.3d 1, 13 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd); *see also **Dennis v. State***, 178 S.W.3d 172, 178-79 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd). What is similar here is that in both instances, according to the State's proof, Appellant acted intentionally to shoot another person. Whether the fact that Appellant had tried to shoot another person makes it more likely that Appellant acted intentionally when he shot Cox is a question on which reasonable minds may differ. In light of Appellant's accident defense, the trial court's decision to allow the extraneous offense evidence to rebut his defensive theory is subject to reasonable disagreement. *See **Bass v. State***, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Accordingly, we hold that the trial court did not abuse its discretion in allowing the evidence pursuant to rule 404(b).

It is not enough, however, that the evidence is relevant. Pursuant to rule 403, the

probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of delay or needless presentation of cumulative evidence. Evidence that Appellant had previously tried to shoot another person is the kind of evidence that has the potential to impress a jury "in some irrational but nevertheless indelible way." *See Montgomery*, 810 S.W.2d at 390. The jury could conclude from that fact that Appellant is a violent person, which is the inference forbidden for this kind of evidence.

A significant amount of time was not required to develop this evidence. The reporter's record for the entire trial on the merits, excluding the voir dire and the punishment hearing, is seven hundred and sixty-four pages long. Of those pages, twenty-three pages were devoted to this witness, including the five pages where the victim's own prior conviction was discussed.

Finally, the State had need for this evidence to establish a fact of consequence, which is Appellant's intent. Appellant testified that the shooting was accidental. Wilson's testimony provided evidence that allowed the conclusion that Appellant intentionally shot Cox. Wilson was not the most reliable historian of events, and the State did not have other evidence of Appellant's intent apart from his actions following the shooting. Accordingly, the State had need of this evidence.

In conclusion, there is evidence to support the trial court's ruling. Reasonable minds could differ as to the admission of this evidence both because of a tenuous connection between the two incidents and because of the chance that the jury would look unfavorably on a person who had previously tried to shoot another individual. These kinds of rulings are subject to harmless error analysis. *See Johnston v. State*, 145 S.W.3d 215, 225 (Tex. Crim. App. 2004) (harmless error analysis appropriate for errors in rule 404(b) rulings). We can be confident that the jury did not misuse this evidence and that it did not distort their verdict because the jury found insufficient evidence that Appellant acted intentionally when he killed Cox. This was a rejection of Wilson's testimony. The jury accepted Appellant's testimony that the shooting was accidental and, in so doing, did not make the forbidden inference that he intended to kill Cox because he had previously tried to shoot another man.[2] We overrule Appellant's third issue.

---

[2] The testimony that the rifle was unreliable and subject to inadvertent firing did not come from Appellant. Accordingly, any residual bias the jury might have against him because of this evidence would not necessarily intrude on the jury's evaluation of the evidence about the condition of the rifle.

## FAILURE TO DISCLOSE GUN IN VIOLATION OF *BRADY V. MARYLAND*

In Appellant's fourth issue, he argues that the State failed to disclose exculpatory evidence, specifically the rifle that he used to shoot Cox.

**Facts**

Before trial, Appellant filed a *Brady* motion requesting exculpatory information. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). Appellant testified that he threw the rifle into the same pond where he disposed of Cox's body. During the trial, the police testified that they searched the pond but did not find the gun there and that they had never recovered it. Following the trial, the State filed a motion for judgment nunc pro tunc. In the motion, the State alleged that the written judgment did not accurately reflect the rendered judgment because it did not include findings regarding a deadly weapon or support the forfeiture of the weapon. The trial court granted the motion and issued a new written judgment, which included a deadly weapon finding made by the jury and a finding that the sheriff's office had recovered a specific rifle in their investigation of the case.

For the first time on appeal, Appellant argues that his right to *Brady* material was violated because the State failed to provide the gun for testing prior to trial. The State responded by asking this court to abate the appeal for an evidentiary hearing. We overruled the State's motion. The trial court held a hearing on the matter, and the State presented evidence that it did not have the gun and that the judgment erroneously stated that the sheriff's office had recovered the rifle. Thereafter, the trial court issued another written judgment, which included the deadly weapon finding but did not include any findings about the sheriff's office recovering the rifle.

Appellant points out that the trial court had jurisdiction to issue the original judgment nunc pro tunc, because notice of appeal had not yet been filed, but did not have jurisdiction to enter the second judgment nunc pro tunc because the appeal was pending at that time. *See* TEX. R. APP. P. 25.2(g). We agree, but we also agree with the State that the forfeiture of the weapon findings were not properly the subject of a nunc pro tunc order. Instead, Texas law contemplates that the state or the relevant police agency will file a separate motion for forfeiture of a weapon in the appropriate case. *See* TEX. CODE CRIM. PROC. ANN. arts. 18.18, 18.19 (Vernon Supp. 2005).

Such a motion would address another problem presented here. Specifically, there is no evidence to support the trial court's finding that the weapon was recovered by the police.

10

Instead, the State filed a motion for judgment nunc pro tunc stating that the judgment entered did not accurately reflect the judgment and sentence. The motion did not include a stipulation that the State had the rifle. And there is no other evidence to support the trial court's finding that the sheriff's office seized a weapon.[3] Accordingly, Appellant has not shown that the State possessed and failed to provide access to the rifle. We overrule Appellant's fourth issue.

**FAILURE TO PRESERVE EVIDENCE**

In his fifth issue, Appellant argues that his due process rights were violated because the State did not preserve the truck from which he shot Cox and that the photographs taken of the truck were inadequate.

**Applicable Law**

Three United States Supreme Court cases establish the parameters of the state's duty to preserve evidence for trial. In *California v. Trombetta*, the Court began with the observation that "[t]he Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment." *California v. Trombetta*, 467 U.S. 479, 480, 104 S. Ct. 2528, 2529, 81 L. Ed. 2d 413 (1984). At issue in *Trombetta* was whether the State was required to preserve potentially exculpatory evidence on behalf of a defendant. *Id.* 467 U.S. at 488, 104 S. Ct. at 2534. The Court noted that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Id.* at 104 U.S. at 486, 104 S. Ct. at 2533. The Court in *Trombetta* concluded that

> [w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality [citation omitted], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

104 U.S. at 489-90, 104 S. Ct. at 2534.

The United States Supreme Court subsequently held, in *Arizona v. Youngblood*, that,

---

[3] We are aware that, in some jurisdictions, the district attorney's office prepares the judgments for the trial court's review and approval. There is no evidence that this occurred here, and Appellant has not shown any evidence that supports the trial court's finding that the State had the weapon.

unless the accused can show bad faith on the part of law enforcement in failing to preserve potentially useful evidence, the accused was not denied his rights under the Fourteenth Amendment's Due Process Clause. *See **Arizona v. Youngblood***, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed.2d 281 (1988). In ***Youngblood***, clothing obtained during a sexual assault investigation was not refrigerated. Two small semen stains were found on the clothing over a year later. Because the clothing had not been refrigerated, the sample had degraded and a test on the stains was inconclusive as to the contributor's identity. The Court held that the State had not violated the defendant's due process rights because there was not a sufficient likelihood that the evidence was exculpatory and because there could not be a violation unless "the exculpatory value of the evidence [was] apparent 'before the evidence [was] destroyed.'" ***Youngblood***, 488 U.S. at 56, 109 S. Ct. at 336. Accordingly, a defendant must show that the loss or destruction of evidence was done with "police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." ***Id.***, 488 U.S. at 56, 109 S. Ct. at 337.

Similarly, in ***Illinois v. Fisher***, the Due Process Clause was not violated when, consistent with police procedure, the police destroyed the white powder they found in the defendant's possession. *See **Illinois v. Fisher***, 540 U.S. 544, 545, 124 S. Ct. 1200, 1200, 157 L. Ed. 2d 1060 (2004) (per curiam). In that case, the police had tested the white powder to confirm that it was cocaine. While on release, Fisher fled the jurisdiction and was a fugitive for ten years. The cocaine was destroyed on a routine basis during the years Fisher was a fugitive. The Supreme Court concluded that "the applicability of the bad-faith requirement in ***Youngblood*** depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence." ***Id.***, 540 U.S. at 549, 124 S. Ct. at 1203. Because Fisher's claim for the need for a retest of the cocaine related to "'potentially useful' evidence," the Court noted that "[a]t most, respondent could hope that, had the evidence been preserved, a fifth test conducted on the substance could have exonerated him." ***Id.*** 540 U.S. at 548, 124 S. Ct. at 1202. That potential benefit was not sufficient to impose a duty upon the police to require the police to retain the cocaine for the decade while Fisher was a fugitive.

## Application

According to Appellant, he shot Cox, according to Appellant, while standing on the

running board of Cox's truck. Appellant argues that his defense depended, in part, on being able to show the jury the mechanics of how he was removing the rifle from the truck, and that this was hampered by not having the truck available for trial. He also argues that by having the truck available, he would have been able to show that Wilson was not in a position to see the events about which she testified. The investigating officers took three photographs of the truck, which were admitted at trial. However, the photographs depict only the passenger side and the front of the truck. The police did not retain the truck. Appellant contends photographs of the driver's side of the vehicle would allow him to better demonstrate how the shooting occurred. Appellant offered photographs of a somewhat similar vehicle, but the State objected, due to the vehicle's dissimilarity. The court sustained the objection.

Appellant does not directly accuse the State of acting in bad faith by not preserving the truck or taking more photographs of it. However, Appellant suggests that "bad faith can be imputed in a case where the State disposes of evidence which is vital to both the State **and** the defense."

We cannot conclude that Appellant has shown bad faith or that it can be imputed under these circumstances. The police took photographs of the truck, and there is no evidence that they were seeking to keep any evidence from Appellant. Furthermore, the truck was hardly unique, and there would be no reason to conclude that releasing the truck would prevent Appellant from having evidence he needed. More importantly, the police had no basis to anticipate that such evidence would be material or exculpatory evidence because they did not know that Appellant would argue that the shooting was accidental until the trial.

Alternately, Appellant argues that we should follow the court's decision in *Pena v. State*, in which the court held that the Texas Constitution's due course of law provision provides broader protection than does the Due Process Clause of the U.S. Constitution. *See Pena v. State*, 226 S.W.3d 634 (Tex. App.–Waco 2007). In *Pena*, the Tenth Court of Appeals held that the due course of law provision does not require a showing of bad faith to bring this kind of claim. *Id.* at 651-53. However, after Appellant filed his brief, the Texas Court of Criminal Appeals reversed the intermediate court decision on the grounds that the defendant had waived the argument that the Texas Constitution provided broader protections because he had not made that argument in the trial court. *See Pena v. State*, No. PD-1411-07, 2009 Tex. Crim. App. LEXIS 511, at *9-10 (Tex. Crim. App. 2009). Appellant has not directed us to, nor have we found, where he

13

advanced this argument in the trial court. Therefore, he has not preserved a claim based on the Texas Constitution. **Id.**

Appellant has not shown that the State acted in bad faith or with the intent to deprive Appellant of exculpatory evidence when it released the truck. Accordingly, Appellant's due process rights were not violated, and we overrule Appellant's fifth issue.

## LESSER INCLUDED OFFENSE

In Appellant's sixth issue, Appellant argues that the trial court erred when it did not, on its own motion, instruct the jury on the lesser included offense of criminally negligent homicide. Appellant was indicted for the offense of murder. The trial court instructed the jury to consider whether he was guilty of murder or the lesser offense of manslaughter. Appellant did not object to the charge and did not request that the jury be instructed on the lesser included offense of criminally negligent homicide.

Appellant concedes that this court has previously held that the failure to submit an unrequested lesser included offense instruction is not error nor is it subject to the **Almanza**[4] egregious harm analysis. *See* **Middleton v. State**, No. 12-07-00066-CR, 2008 Tex. App. LEXIS 2137, at *9-10 (Tex. App.–Tyler Mar. 26, 2008, pet. ref'd) (mem. op., not designated for publication) (citing **Delgado v. State**, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007)). Appellant suggests that this court relied on dicta in the **Delgado** decision and respectfully requests that we reconsider our holding.

The **Delgado** decision addressed whether the trial court was required, in the absence of a request, to give an instruction defining the state's burden of proof for extraneous offenses offered in the guilt phase of trial. **Id.** at 253. Analogizing that issue with the issue of whether it was error for the trial court not to give an unrequested instruction for a lesser included offense, the court concluded that such matters were strategic decisions to be made by a defendant and so did not represent an error that could be complained of on appeal. **Id.** at 250, 254. The court quoted Professor George Dix at length, and with approval, on this precise issue, including the following passage from Professor Dix:

---

[4] **Almanza v. State**, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

> Because of the strategic nature of the decision, it is appropriate for the trial court to defer to the implied strategic decisions of the parties by refraining from submitting lesser offense instructions without a party's request. It is clear that the defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense refrained from requesting one.

*Id.* at 250 (quoting 43 George E. Dix & Robert O. Dawson, CRIMINAL PRACTICE AND PROCEDURE § 36.50 (Supp. 2006)).

Strictly speaking, Appellant is correct that this language was not directly necessary to the court's ultimate holding in ***Delgado***. However, we conclude that the court's statements in ***Delgado*** are an accurate assessment of the law. *See **Oursbourn v. State***, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008) ("As we recently stated in ***Delgado***: 'The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. But it does not inevitably follow that he has a similar sua sponte duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues. These are issues that frequently depend upon trial strategy and tactics.'"); *see also **Thomas v. State***, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985) (court could not consider complaint about lesser included instruction that was not sought by the defendant).

Appellant's position, which would essentially require a trial court to instruct the jury on every plausible lesser included offense, would allow convictions for offenses the defendant had never been charged with and instructions for which neither party asked. As the court noted in ***Posey v. State***, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998), that convicted person could then argue on appeal that it was error to instruct the jury on a charge that neither he nor the state sought.

The legislature has provided a mechanism to deal with this issue. The trial court is obligated to give a charge to the jury. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). The defendant is provided an opportunity to examine the charge and present objections. *Id.* In some cases, it is clear that a defendant is not seeking an instruction on lesser included offenses. *See **Walton v. State***, No. 14-06-00227-CR, 2007 Tex. App. LEXIS 1847, at *6-7 (Tex. App.– Houston [14th Dist.] Mar. 8, 2007, pet. ref'd) (mem. op., not designated for publication). In other cases it may be less clear, but article 36.14 imposes an obligation on a defendant to raise any objections he has to the proposed charge at a time when those objections can be addressed, that is before the jury is instructed.

The decision to request a lesser included offense instruction is a strategic one that belongs to the litigants. Accordingly, the failure to give an unrequested instruction for a lesser included offense is not error. We overrule Appellant's sixth issue.

## DISPOSITION

Having overruled Appellant's six issues, we *affirm* the judgment of the trial court.

  **SAM GRIFFITH**  
Justice

Opinion delivered April 16, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)